HENDRIX v. HOLDEN.

1. APPEAL.—A FINDING OF FACT by master not excepted to, is binding on Circuit Judge.
2. ADMINISTRATION—PRESUMPTION.—Grant of letters of administration by probate court must be presumed regular in all respects, when questioned in another proceeding, unless defect appears affirmatively

on face of record. *Hartley* v. *Glover,* 56 S. C., 69, *distinguished from this.*

3. IBID.—JUDGMENTS.—Intestate died in June, administration granted in October, judgment obtained against him on intestate's notes in following October, lands of intestate in possession of husband, administrator and children, sold two and four years after; *held,* that sale was valid and binding on heirs, and they had no such *exclusive possession* as would require them to be made parties to the suit on the notes.

Before GARY, J., December, 1899, Oconèe.     Reversed.

Action for partition by N. A. Hendrix and the other children of Naomi Holden, against William Holden, administrator, John D. Verner and others in possession of lands of which she ·died seized and possessed, under sale by sheriff under execution, and parties holding liens on interest of Wm. Holden in said lands. So much of the case as refers to the Oconee County lands was referred to master of that county to decide all issues. Upon exceptions to his report, the Circuit Judge made the following decree:

"On the 30th day of June, 1891, Naomi Holden departed this life intestate in Oconee County. At the time of her death she was seized in fee simple and in the exclusive possession of the several tracts of land described in the complaint, which are the subject matter of this action. The said Naomi Holden left surviving her as next of kin and heirs at law, her husband, the defendant, William Holden, and her children, the plaintiffs above named. After the death of the said Naomi Holden, her said husband and children continued in the uninterrupted possession, use and enjoyment of the real estate of the said Naomi Holden up to the time the same was sold by the sheriff, under an execution issued on the 15th day of October, 1892, to enforce the payment of a judgment in favor of John D. Verner, as plaintiff, against the said William Holden, as administrator of the said Naomi Holden and in his own right. ·This judgment of John D. Verner was recovered under the following circumstances: On the 12th day of October, 1891, said William Holden was

appointed administrator of the personal estate of Naomi Holden by Richard Lewis, Esq., judge of probate for Oconee County. I think it important that the petition and order of appointment should be set out at length. They are as follows: 'The State of South Carolina, County of Oconee. To Richard Lewis, judge of probate of the County and State aforesaid: The undersigned most respectfully petitions for letters of administration upon the estate of Naomi Holden, deceased. (Signed) Wm. Holden. On hearing the above petition, it is ordered, that William Holden be appointed administrator of the personal estate of Naomi Holden, deceased, upon his giving good and sufficient bond. Given under my hand and seal this 12th day of October, 1891. (Official seal.) (Signed) Richard Lewis, Judge of Probate.' This petition and order are both written on the same sheet of paper, just as appears in the above copy. On the same day the said William Holden entered into bond in the sum of $800, with W. F. Parker and R. E. Mason as sureties, conditioned for the faithful administration of the goods, chattels and credits of the said Naomi Holden.

"On the 8th day of September, 1892, John D. Verner commenced an action in the Court of Common Pleas for Oconee County against William Holden, as administrator of the estate of Naomi Holden, and in his own right, on two notes alleged to have been executed by Naomi Holden to the said William Holden, the one dated 1st November, 1888, for $5,400, and the other for $1,500, both due one day after date, and endorsed by the said William Holden. On October 6th, 1892, judgment was recovered by default in favor of the said John D. Verner and against the said William Holden, both as administrator of the estate of Naomi Holden and in his own right, for the sum of $8,919.38, William Holden having accepted service of summons in this action, both in his representative and individual capacity, and having failed to file any answer. On the 15th day of October, 1892, execution was issued to enforce said judgment, and under and by virtue of the same the sheriff sold the various

32—58

lots of land herein sought to be partitioned. The title deeds of the various purchasers are in evidence before me, from which it appears that on the 7th May, 1894, he sold to Thos. N. Hall and L. G. Gaston a lot known as the 'Cox' lot, in Westminster, containing one acre, and alo the John W. Mason lot, in said town, containing one and one-half acres. On 5th February, 1894, the said sheriff sold to the defendant, Josiah Holden, 250 acres in Oconee County, fully described in his answer in this cause. On 3d February, 1896, he sold to the defendant, William M. Gossett, lot No. 44, in the town of Westminster, and on the same day he sold to the defendant, John D. Verner, a tract of land on Choestoe Creek, containing eight and one-tenth acres, also the one-sixth interest in 830 acres, known as the 'King' lands, also one other lot in said town, fronting Gum street. Also a part of lot No. 5, containing 12 36-100 acres in said town (Doyle survey) ; also lot No. 38; also a lot in said town, known as the 'Fannie Nelson' lot, containing one-half acre; also the William Nix place, containing 950 acres, on both sides of Boon's Creek; also two lots in the town of Walhalla, known as lot 58, and containing one acre. It is admitted by the parties to this action that Naomi Holden is the common source, and that she died intestate, and was the owner in fee simple of all the lands which have been sold by the sheriff of Oconee County, and that she was the owner of two tracts of land in Oconee County, which have not been sold—one tract of seventy-five acres on Keowee River, and also a lot in Danville, known as lot No. 2—and that she was also the owner in fee simple of three small tracts of land in the county of Pickens, one containing 100 acres, one 60 acres, and the other containing 625 acres.

"As already intimated, this suit is brought by the plaintiffs as heirs at law (being the children) of Naomi Holden, for the purpose of recovering the several tracts of land which were sold off, under the judgment and execution in favor of John D. Verner against the said William Holden, in his own right and as the administrator of Naomi Holden, deceased,

and to partition the same amongst the said heirs at law of the said Naomi Holden, and for the purpose also of partitioning the several tracts of land that have not heretofore been sold. The present action was commenced on the 15th day of January, 1898. On July 13th and 14th, 1898, Judge Benet granted an order that as to the defendants, John D. Verner, William M. Gossett, Josiah Holden, Thomas N. Hall and L. G. Gaston, the said cause be transferred to the Court of Common Pleas for Oconee County for trial of the issues between the plaintiffs herein and said defendants, and for any other proceedings that might. arise in the cause. On the 10th day of September, 1894, an order of reference was granted by the Court, referring the said issues to the master of Oconee County to determine all the issues of law and fact involved in said cause. At the reference before said master it was adjudged that the administrator of Naomi Holden was a necessary party to the action, and William Holden, as such, was made a party defendant, and filed his answer in the cause. The reference then proceeded. The master has taken a large amount of testimony and filed the same, together with his report on the issues of law and fact, in said cause. On this report and the exceptions thereto the cause was heard by me at Walhalla on the 10th day of November, 1899. At the conclusion of the arguments I reserved my decision until I could have an opportunity to formulate it in a decree. I should have stated that the master decided that the title to the several tracts of land described in the separate answers of John D. Verner, Wm. M. Gossett, L. G. Gaston, Thomas N. Hall and Josiah Holden to be good, and recommended that the complaint of the plaintiffs as to those defendants should be dismissed with costs. The exceptions to the master's report raised the question, in various forms, whether there was error in the said report in concluding that the title of the various purchasers of the several tracts of land sold under the Verner judgment and execution was good and valid. The sixth allegation of the plaintiff's complaint is as follows: 'That the defendant, John D. Verner, claims to

have some interest in the lands situate in the county of Oco-
nee by reason of the sheriff's sale thereof under a certain
judgment obtained against the defendant, William Holden,
individually and as administrator of the estate of Naomi
Holden, but these plaintiffs allege that as to them this judg-
ment and sales thereunder are null and void, and the claims
thereunder are worthless and cannot affect their interest in
any of the said lands.' The defendants having admitted
that Naomi Holden at the time of her death was the owner
in fee of the land in dispute in this case, and that she is the
common source of title from whom all the parties to this
case are claiming title, and it appearing that the plaintiffs
are the children of Naomi Holden and heirs at law, the bur-
den is then cast upon the defendants to show that the judg-
ment of Verner, and execution thereon, were sufficient to
divest said plaintiffs of their title to said land. And that
question brings up the real issue in the case. Is the Verner
judgment and sale thereunder sufficient to divest these plain-
tiffs? *Bonham* v. *Bishop,* 23 S. C., 96. In determining
whether these purchasers have a good and valid title, I think
it is well settled that as a general rule purchasers at sheriff's
sales are not required to look into the regularity of the pro-
cess under which the sale is made, but that principle does not
apply when the process under which the sale was made was
absolutely void. *Small* v. *Small,* 16 S. C., 72. It is also
well settled that the judgment, execution, levy and sale are
all links in the chain of title to property purchased at sheriff's
sale. All are necessary to support the purchaser's title, and
if any one is void, the title of the purchaser fails. *Sheriff* v.
*Welborn,* 14 S. C., 480; *Bonham* v. *Bishop,* 23 S. C., 102.
The defendants seem to have recognized this rule in the man-
agement and conduct of their defense. The 4th allegation
of the answer of John D. Verner is as follows: 'That on the
12th day of October, 1891, the defendant, William Holden,
was duly appointed and qualified as administrator of the per-
sonal estate of the said Naomi Holden, deceased, by the
judge of probate in and for Oconee County, in said State,

and he is still such administrator.' We find from the testimony reported by the master the following extracts: 'Package No. 767 from the probate court, containing the record of the administration of the estate of Naomi Holden, introduced in evidence.' Again, we find: 'Judgment roll No. 1932, in case of J. D. Verner, plaintiff, against William Holden, as administrator and in his own right, introduced in evidence.' It seems to me that the validity of the defendant, Verner's, judgment depends upon the appointment of William Holden as administrator of the estate of Naomi Holden, deceased, that being a link in the chain of title of the defendants. Roll No. 767, referred to by the master as containing the record of administration of the estate of Naomi Holden, is before me, and it consists of the petition and order set out at length in the statement of facts in the cause, and the bond of the said William Holden. If that is the evidence of the appointment of the administrator, I must conclude that it is defective, and that the defect is jurisdictional. The mode of granting administration is statutory. Section 2027 of the statute is: 'The judge of probate shall grant administration in the following manner: After requiring the person or persons applying therefor to file a petition in writing, he shall issue a citation to the kindred or creditors of the intestate or person deceased, to show cause, if any they have, why administration shall not be granted to the person or persons applying therefor, and he shall cause the same to be published on the court house door of the county in which his office is for two successive weeks, and also by having it printed once a week for two successive weeks, after it has been issued, in some public gazette, if any be published, in the county.' Section 2028 of the statute is: 'Every administrator shall, in open court, when letters of administration are granted him, take the following oath or affirmation, as the case may be, to wit: "I do solemnly swear, or affirm, that A B, deceased, died without any will, as far as I know or believe, and that I will well and truly administer all and singular the goods and chattels, rights and credits of the said de-

ceased, and pay all his just debts, as far as the same will extend, and the law require me, and that I will make a true and perfect inventory of all the said goods and chattels, rights and credits, and return a just account thereof when thereunto required. So help me God." From the record offered in evidence it does not appear that any of these requirements have been complied with, save the giving of the bond by the administrator and the petition in writing, if such it may be termed. On the contrary, the order of the probate judge recites the fact that administration was granted 'on *hearing the petition.*' This does not come up to the requirements of the statute. In *McRae* v. *David*, 5 Rich. Eq., 484, it was decided that the duty of the ordinary to take a bond as prescribed by statute was ministerial and not judicial. It is true, the bond is signed by two individuals as surety, but has the bond been approved by the court as the statute requires? In *Hankerson* v. *R. R. Co.*, the Court held that 'Any competent evidence showing that the court undertaking to grant such letters of administration had no jurisdiction to do so, would be alike admissible; for if the court have no jurisdiction, then the alleged letters of administration would be mere nullities, and surely the certified copy would be no better.' It is contended, however, that the judgment of the court of probate, evidenced by the certified copy of the letters of administration, cannot be attacked in this collateral proceeding. That depends upon whether the judgment in question is absolutely void or is merely voidable. If the former, then it is a mere nullity, and may be so treated whenever it is encountered; but if the latter, then it cannot be attacked in any collateral proceeding, but must be avoided by some direct proceeding instituted for that purpose. As we understand it, the test whether a judgment is void or merely voidable for want of jurisdiction, is whether the lack of jurisdiction appears upon the face of the record, or whether the infirmity must be shown by evidence outside of the record. In the former case, it is absolutely void, for in such a case no inquiry is necessary to show what appears on the face of the

record, while in the latter case such inquiry is necessary to ascertain the fact showing the lack of jurisdiction. See *Turner* v. *Malone,* 24 S. C., 398. In the very recent case of *Hartley* v. *Glover,* 56 S. C., 69, it seems that Mr. Justice Gary wrote the opinion for the Supreme Court, in which Mr. Chief Justice McIver did not concur, but wrote a dissenting opinion, in which Mr. Justices Pope and Jones concurred. So that the dissenting opinion of Mr. Chief Justice McIver became the law of the case (two of the Justices having agreed with him). It is true, the Court had under consideration a case where administration was granted on a derelict estate, but that would not change the reasoning, as the authority to grant such administration is under a different section of the statute; the point at issue being that the power or authority to appoint an administrator is derived from the statute, and the provisions of the statute must be observed. The departure from the statute in the Hartley and Glover case consisted in the fact that the record on its face disclosed the fact that the forty days' notice required by the statute had not been complied with. The majority of the Court held that this defect was jurisdictional and fatal, and that the record might be treated as a nullity, 'whenever and wherever it is encountered.' The conclusion of the Court was that the power conferred by a special statute can only be exercised in the manner and under the terms prescribed by such statute, citing *Whitesides* v. *Barber,* 24 S. C., 373. The record in the present case does not disclose that the requirements of the statute have been complied with, but, on the contrary, it discloses the fact that administration was granted on the *petition* of the administrator. The order appointing the administrator is conditional upon his giving good and sufficient bond. The act of giving the bond is ministerial, approving the same is *quasi* judicial. At any rate, the record shows that the provisions of the statute have not been complied with, and this is jurisdictional and fatal to the validity of the judgment set up by the defendants. Consequently the sheriff's deed did not convey the interest of the plaintiffs in

the land sold by him under said judgment. It seems to me, however, that there is another and better reason why said sales should not be sustained. As already stated, it is admitted that Naomi Holden was the owner in fee and in the exclusive possession of said land at the time of her death. After her death these plaintiffs and their father, William Holden, succeeded her in that possession, and continued in the use and occupation of the same till ousted by the purchasers at the sheriff's sale. William Holden testified as to the possession in the following language: Q. 'From the time of her death up to the time the sheriff sold her land in this county, who was in possession of the real estate she left?' A. 'Me and my children.' * * * Q. 'What was done with the income from these different lands?' A. 'I used it, me and my children, for taxes and to live off of. * * * Me and my children was in possession of all the land that was sold under this judgment from her death up to the sale.' The law in this State governing sale of land under a judgment obtained against an administrator in an action to which the heir at law was not a party, is clearly stated in *Huggins* v. *Oliver*, 21 S. C., 147, and also in the later case of *Wheeler* v. *Floyd*, 21 S. C., 413. In the former case, the authorities are reviewed and conclusion is announced that lands of an intestate may be sold under a judgment recovered against his administrator upon a debt of the intestate; but if the lands have passed into the actual and exclusive possession of the heirs at law before the judgment was recovered, they cannot be sold under such judgment, and can only be reached by the usual proceedings to subject real estate in the possession of the heir to the payment of the debts of the ancestor, to which proceeding the heir would, of course, be a party. In *Wheeler* v. *Floyd,* 24 S. C., 419, the same rule is announced, the language of the Court being: 'While it is true that the heir is generally liable for the debts of the ancestor, sealed or unsealed, to the extent of lands descended or devised, yet the land so descended or devised cannot be sold under a judgment obtained against the adminis-

trator or executor, obtained in an action to which the heir is
not a party, if at the time of such judgment the heir is in the
exclusive possession of the land, asserting the right of pos-
session and *enjoying its rents and profits* (my italics).   In
such case the heir can only be made liable by direct action
against him or them, in which, if judgment is obtained, the
land can be levied upon, provided it has not been transferred
before action brought.' Citing *Bird* v. *Houze,* Speer's
Eqty., 252, and *Jones* v. *Wightman,* 2 Hill, 579.

"Now, the only question here is one of fact.   Were the
heirs in exclusive possession at the time this judgment was
recovered?   What is exclusive possession?   I take it that
it is such a holding that if continued for the statutory period
would ripen into a title by adverse possession, and it does
seem to me that these plaintiffs have come within that rule.
Their father has rented the same out to tenants, collected the
same and expended them for the use of himself and chil-
dren—the highest proof of exclusive possession.   It
nowhere appears that he transferred or changed his posses-
sion of *an heir at law* to that of an *administrator.*   He made
no returns as such.   Having reached this conclusion, I am
constrained to overrule the master in his finding of fact on
this subject.   I, therefore, hold that the titles under said
judgment of John D. Verner are invalid as against the heirs
at law of Naomi Holden, and that they are entitled to have
the same partitioned.   The judgment is assailed on several
other grounds, but having arrived at a satisfactory conclu-
sion, I think it unnecessary to pass on them.

"It is, therefore, ordered, that the exceptions of the plain-
tiffs and such of the defendants as have filed exceptions to
the master's report be, and the same are hereby, confirmed in
so far as they are consistent with the views announced in this
decree, and that the report of the master is hereby reversed
in so far as the findings of fact and conclusions of law are
inconsistent with the conclusions announced in this decree.
* * *"

The defendants, John D. Verner, William M. Gossett, Josiah Holden, Thomas N. Hall and L. G. Gaston, gave due notice of intention to appeal from the judgment and decree of his Honor, Ernest Gary. The defendant, John D. Verner, excepts to the decree on the following grounds, to wit:

"1. Because on the reference before the master on September 28th, 1899, the plaintiffs recognized that William Holden was the duly authorized administrator of the estate of Naomi Holden, and that he was a proper party to the action in his representative capacity, whereupon the following admission and agreement was entered on the record, to wit: 'It is admitted by all parties that the administrator of Naomi Holden is a proper party to this suit in his representative capacity, and it is agreed that the summons and complaint be so amended as to make him a party; that his answer be filed as of this date.' That the summons and complaint should be considered thus amended, and there should be read into the complaint as amended an allegation in the usual form alleging the lawful appointment and qualification of William Holden, as administrator of the estate of Naomi Holden; that the answer of William Holden, as such administrator, was filed, alleging that he is the administrator of the estate of said Naomi Holden; that after the complaint was thus amended and answer filed, the plaintiffs and the defendant, William Holden, are estopped from raising the question or disputing the legality of the appointment and qualification of the administrator, and the Circuit Judge erred in not so holding.

"2. Because the validity of the appointment of William Holden as administrator of the estate of his wife, Naomi Holden, deceased, was not questioned on the trial before the master or the Circuit Judge, the plaintiffs making no contention or exception that there was any irregularity or defect in such appointment, and the Circuit Judge erred in presuming such irregularity or defect in the grant of letters of administration as to render the same null and void.

"3. Because the master found as facts, to which no excep-

tion was taken, as follows, to wit: 'That Naomi Holden died intestate at Westminster, Oconee County, where she then resided, on June 30th, 1891, leaving as her heirs at law her husband, the de'fendant, William Holden, and seven children, the plaintiffs in this action. * * * On October 12th, 1891, William Holden was duly appointed administrator of the personal estate of Naomi Holden, deceased, by Richard Lewis, judge of probate of Oconee County, and letters of administration were duly issued to him. He thereupon entered upon the discharge of his duties as such administrator, and is still acting as such.' That after this finding by the master, and no exceptions being filed thereto, the Circuit Judge erred in holding that William Holden was not the duly appointed and qualified administrator of the estate of Naomi Holden, deceased.

"4. Because this case should have been heard and determined by his Honor upon the report of the master and the exceptions thereto, or recommitted for further testimony, before making the assumption that citation was not duly published for letters of administration to William Holden on the estate of Naomi Holden.

"5. Because on the hearing of this case before the Circuit Judge on the report of the master and the exceptions filed there was no question raised as to any irregularity or defect in the grant of letters of administration by the probate court, it having been conceded all along that William Holden was the duly appointed and authorized administrator of the estate of Naomi Holden, and the Court erred in not so holding.

"6. Because William Holden, the husband of Naomi Holden, deceased, is given preference by statute in the administration of his deceased wife's estate, and the court of probate had exclusive jurisdiction of the granting of letters of administration, and having jurisdiction of the subject matter upon which it acted in this instance, the maxim, '*omnia presum-enitur rite esse acta,*' is applicable, and the Circuit Judge erred in not so holding.

"7. That in the absence of affirmative evidence that there was no publication of citation, the Circuit Judge erred in making the assumption that there was no publication of citation for two weeks, as prescribed by the statute for the grant of letters of administration to the next of kin of the intestate.

"8. Because it does not appear affirmatively from an inspection of the record in the grant of letters of administration to William Holden on the estate of his deceased wife, Naomi Holden, that the probate court of Oconee County acquired no jurisdiction to do so, the legal presumption being that citation was duly published for two weeks; that the administrator took the statutory oath in open court; that the bond of the administrator was given and approved as the statute required; and his Honor erred in not so holding.

"9. Because his Honor erred in holding that at the time the judgment of John D. Verner against William Holden, as administrator of the estate of Naomi Holden, deceased, was obtained and the sales of the real estate made thereunder, the plaintiff and the defendant, William Holden, were in such actual and exclusive possession of said land as would prevent a sale of the several tracts or lots of land under said judgment and execution issued thereon.

"10. That a distinction should be drawn between the mere *pedis possessio* of the heirs on and after the descent cast, and that actual and exclusive possession, which is manifested by partition, or some act of similar import, whereby the heirs are found to be not only in actual but exclusive possession against the claims of creditors, and his Honor erred in not so holding.

"11. Because his Honor erred in holding that the burden of proof is on the defendants to show that as a matter of fact the plaintiffs and the defendant, William Holden, were not in exclusive possession of said land at the time of the recovery of said judgment and sale thereunder; whereas, it is respectfully submitted that since plaintiffs are now seeking to recover possession of said land from defendants, who went into quiet and peaceable possession at the time of the pur-

chase thereof, the burden of proof is now on the plaintiffs and the defendant, William Holden, to show that they were in such exclusive possession as would prevent a sale under the execution issued on said judgment.

"12. Because his Honor erred in holding the titles under said judgment of John D. Verner against William Holden, as administrator of Naomi Holden, to be invalid against her heirs at law; that the heirs of Naomi Holden can recover the same of the several purchasers at sheriff's sale thereof under said judgment, and are entitled to have partition among themselves.

"13. Because, in any event, this defendant and other purchasers at said sale own the undivided one-third interest of William Holden in said lands, said judgment being also against William Holden in his own right, and the one-third interest of William Holden in the unsold land belonging to said estate, being worth more than $1,000, and his Honor erred in not so holding.

"14. Because the judgment in the case of John D. Verner against William Holden, as administrator of the estate of Naomi Holden, cannot be attacked collaterally in this action, and the Circuit Judge erred in not so holding.

"15. Because the judgment of the probate court, *in re* the appointment of William Holden as administrator of the estate of Naomi Holden, is not subject to collateral attack in this action, and the Circuit Judge erred in not so holding.

"16. Because, as to plaintiffs and defendant, William Holden, the appointment of William Holden as administrator of the estate of Naomi Holden, deceased, has become *res adjudicata,* and they are estopped from raising such question by the record in the case of John D. Verner against William Holden, as administrator of Naomi Holden's estate and in his own right."

The defendants, William M. Gossett, Josiah Holden, Thomas N. Hall and L. G. Gaston, except to the decree on the following grounds:

"I. It was error on the part of the Circuit Judge to find and hold that 'the record shows that the provisions of the statute (relating to the appointment of William Holden, as administrator of the estate of Naomi Holden, deceased,) have not been complied with, and that this is jurisdictional and fatal to the validity of the judgment set up by defendants. Consequently the sheriff's deed did not convey the interest of the plaintiffs in the land sold by him under said judgment,' and the Circuit Judge should have found and held that it did not affirmatively appear upon inspection of the record that the probate court failed to comply with the statutory requirements before granting the letters of administration, and, in the absence of such showing, it must be assumed that the probate court conformed to the requirements of law, and that the appointment of William Holden as the administrator of the estate of Naomi Holden, deceased, was properly made as required by law, and that the title of these defendants to the tracts of land purchased by them under the judgment of John D. Verner *v*. William Holden, as administrator of the estate of Naomi Holden, deceased, and in his own right, are valid.

"2. For that the Circuit Judge erred in finding 'that roll No. 767, referred to by the master as containing the records of administration of the estate of Naomi Holden, is before me, and it consists of the petition and order set out at length in the statement of facts in the cause and the bond of the said William Holden. If that is the evidence of the appointment of the administrator, I must conclude that it is defective, and that the defect is jurisdictional;' but the Circuit Judge should have considered all the evidence in the cause tending to show that William Holden was the duly appointed and qualified administrator of the estate of Naomi Holden, deceased, including the letters of administration granted to William Holden, as administrator of the estate of Naomi Holden, deceased, which letters of administration were also contained in and were a part of the record from the probate court contained in roll No. 767, introduced in evidence, and from such

evidence have found and held that William Holden was the duly appointed and qualified administrator of the estate of Naomi Holden, deceased; and in the absence of evidence either for or against anything necessary to have been done, he should have assumed that the formal requisites to its validity had been complied with.

"3. It was error on the part of the Circuit Judge to consider the question of the appointment of the administrator when the validity of such appointment was not questioned before the master, and after it had been alleged and admitted by the pleadings, and in the trial before the master, that William Holden was such administrator, and after the master had found that 'On October 12th, 1891, William Holden was duly appointed administrator of the personal estate of Naomi Holden, deceased, by Richard Lewis, judge of probate of Oconee County, and letters of administration were duly issued to him. He thereupon entered upon the discharge of his duties as such administrator, and is still acting as such,' and such finding of the master was not questioned by any exception thereto, nor was the validity of the appointment of the administrator.

"4. For that the Circuit Judge should have found and held that the appointment of William Holden as administrator of the estate of Naomi Holden, deceased, was regular and was duly made by the probate court for Oconee County.

"5. The plaintiffs having admitted the representative character of William Holden as administrator of the estate of Naomi Holden, deceased, in the trial of the cause before the master, plaintiffs are estopped from raising such question afterwards.

"6. For that it was error on the part of the Circuit Judge to consider the appointment of William Holden as administrator of the estate of Naomi Holden, deceased, and that the Circuit Judge should have held that the defendant, William Holden, and plaintiffs are estoppped now from raising such question by the record in the case of John D. Verner *v.* William Holden, as administrator of the estate of Naomi Hol-

den, and in his own right, and that such question is now *res adjudicata* as to the defendant, William Holden, and the plaintiffs.

"7. It was error on the part of the Circuit Judge to overrule the finding of the master that the heirs at law of Naomi Holden, deceased, were not in the actual and exclusive possession of the lands sold under the execution in the cause of John D. Verner *v.* William Holden, as administrator of the estate of Naomi Holden, deceased, and in his own right, and to find and hold that the heirs at law of said Naomi Holden were in actual and exclusive possession of the said lands, and that the titles under said judgment of John D. Verner are. invalid as against the heirs at law of Naomi Holden, and that they are entitled to have the same partitioned.

"8. The defendants being in possession of the several tracts of land purchased by. them, under written titles, as *bona fide* purchasers, the burden is upon plaintiffs to show their right to recover the said tracts of land from defendants, by a preponderance of all the evidence, and the Circuit Court erred in not so holding.

"9. The defendants being in possession of the several tracts of land, under written titles, as *bona fide* purchasers, the burden is upon the plaintiffs to show, by a preponderance of the evidence, that the heirs at law of Naomi Holden were in actual and exclusive possession of the tracts of land purchased by these defendants, at the time of the sale of said lands, under the judgment in the case of John D. Verner *v.* William Holden, as administrator, etc., and it was error in the Circuit Judge to hold otherwise.

"10. It was error on the part of the Circuit Judge to find and hold that the titles of these defendants under said judgment of John D. Verner *v.* William Holden, as administrator, etc., were invalid as against the heirs at law of Naomi Holden, and the Circuit Judge should.have affirmed the finding of the master that these defendants were *bona fide* purchasers, for valuable consideration and without notice, at the sheriff's sales of the tracts of land purchased by them, and

that the titles these defendants obtained under their purchases at such sales are valid.

"11. It was error on the part of the Circuit Judge to find and hold that the titles under said judgment of John D. Verner are invalid as against the heirs at law of Naomi Holden, and that they are entitled to have the same partitioned; and in not holding that these defendants are entitled to the interest of the defendant, William Holden, in the several tracts of land purchased by them.

"12. For that the Circuit Judge should have found that the defendant, William Holden, procured the defendant, Josiah Holden, to purchase the tract of land purchased by the defendant, Josiah Holden, representing to him that the land was being sold to pay the debts of Naomi Holden, deceased, and the Circuit Judge should have held that such conduct on the part of the defendant, William Holden, estops the defendant, William Holden, and the plaintiffs from now claiming any part or interest in the tract of land purchased by the defendant, Josiah Holden, under the said John D. Verner judgment.

"13. It is respectfully submitted that neither the judgment of the probate court of Oconee County *in re* the appointment of William Holden, as the administrator of the estate of Naomi Holden, deceased, nor the judgment of the Court of Common. Pleas *in re* John D. Verner *v.* William Holden, as administrator, etc., can be attacked, collaterally, in this proceeding, and it was error on the part of the Circuit Judge so to hold."

*Messrs. Jaynes & Shelor,* for Jno. D. Verner, appellant, cite: *Lands of intestate may be sold under judgment against administrator:* Rev. Stat., 2112; 4 McC., 128; 2 Hill, 579; 6 S. C., 356; 15 S. C., 136; 16 S. C., 71; 21 S. C., 147; 25 S. C., 172, 149. *Where statute of limitations has intervened, equity will not relieve:* 25 Fla., 202; 13 Fla., 277. *Objection that suit against administrator is too soon, must be taken by plea in case:* 2 N. H., 475; 8 N. H., 98; 48 N. H., 25; 4

33—58

Rob., 392; 5 Ala., 380. *No irregularity in judgment and execution:* Code, 308, sub. 2, 197; 1 Hill, 167; 21 S. C., 154; 32 S. C., 375. *Husband not entitled to homestead in property of wife:* Rev. Stat., 2129; 33 S. C., 498; 25 S. C., 580. *Plaintiffs are estopped from questioning appointment of administrator:* 56 S. C., 69; 45 S. C., 82. *Probate court had jurisdiction, and presumption is that proceedings are regular:* 38 S. C., 45; 41 S. C., 17; 6 Rich. Eq., 384.

*Messrs. Stribling & Herndon,* for Wm. M. Gossett, Josiah Holden, Thos. N. Hall and L. G. Gaston, appellants, cite: *Appointment of administrator regular:* Rev. Stat., 2314; 24 S. C., 427, 503; 54 S. C., 87; 25 S. C., 282; 6 Rich. Eq., 384; 41 S. C., 17; 18 Wall, 364; 55 S. C., 502. *Regularity presumed, question not before Circuit Court:* Code, 294; Acts 1890, p. 696; 45 S. C., 264. *And not subject to collateral attack:* 6 Rich. Eq., 384; 41 S. C., 17; 21 S. C., 153; 56 S. C., 4. *Heirs not in exclusive possession:* Rev. Stat., 2112; 1 Brev., 289; 4 McC., 128; 6 S. C., 356; 21 S. C., 147. *Burden is on plaintiffs to show such possession:* 26 S. C., 164; 33 S. C., 190. *Plea as to bringing of suit within the twelve months, res judicata:* 21 S. C., 153. *Children and husband not entitled to homestead:* Rev. Stat., 2199; 25 S. C., 580; 33 S. C., 498; 56 S. C., 354.

*Messrs. J. P. Carey* and *J. A. McCullough,* contra, cite: *Lands of decedent cannot be sold under judgment against administrator, if heirs are in actual and exclusive possession:* 19 S. C., 160; 1 Brev., 289; 4 McC., 128; 2 Hill, 579; Speers' Eq., 250; 6 S. C., 356; 21 S. C., 147; 24 S. C., 413; 2 DeS. Eq., 232; 21 S. C., 510; 20 S. C., 418; 53 S. C., 354; 1 Bail., 45; 38 S. C., 464. *Judgment void because brought within period inhibited by statute:* Rev. Stat., 2322; 38 Am. R., 15; 65 Am. Dec., 364; 18 Fed. R., 119; 13 S. C., 328; 19 S. C., 166; 49 S. C., 49; 56 S. C., 69; 21 S. C., 356. *Defect in administration proceedings is defect in claim of title, is jurisdictional here and can be raised at any time:* 14 S. C.,

48; 23 S. C., 102; 35 S. C., 14; 37 S. C., 444. *Judgment and execution do not run de bonis testatoris, and hence title is not good:* 16 S. C., 71; 15 S. C., 136. *Judgment is rendered void by collusion between creditor and administrator:* 23 S. C., 373; 55 S. C., 343. *Heirs have right to interpose here any defense they may have had to the original cause of action:* 1 S. C., 194; 9 S. C., 430; 19 S. C., 160; 24 S. C., 413.

Aug. 24, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. On the 30th day of June, 1891, Mrs. Naomi Holden departed this life intestate, survived by her husband, William Holden, and her children, the plaintiffs, who were all minors at that time; on the 12th day of October, A. D. 1891, the defendant, William Holden, procured letters of administration upon her estate to be granted to him by the probate court of Oconee County, S. C., and her personal estate was very inconsiderable, but her real estate was considerable, lying partly in Oconee County and partly in Pickens County, although at her death she was residing with her said husband and with her said children in the little town of Westminster, in Oconee County. In 1888, the plaintiff, N. A. Holden, intermarried with — Hendrix, and never afterwards lived as one of the family. Mrs. Naomi Holden had given her note to the firm of Peden & Anderson, and also executed a mortgage of some of her lands to secure said note. Mrs. Holden had also, in the year 1888, executed her two sealed notes to her husband, William Holden, one for the sum of $5,500, due at one day after date, and dated the first day of November, 1888, with interest at seven per cent. per annum, and another of the same date, and also due at one day after date, at seven per cent., for the sum of $1,500, both aggregating the sum of $8,000.

On the 12th day of October, 1891, upon the application of William Holden, he was appointed the administrator of the personal estate of his wife, Mrs. Naomi Holden, deceased, gave bond as such administrator with sureties thereto, and

had letters of administration duly issued to him by Mr.
Lewis, the probate judge for Oconee County. William Hol-
den transferred the two sealed notes, given to him by his
said wife, Mrs. Naomi Holden, for value, unto John D. Ver-
ner. On the 8th day of September, 1892, John D. Verner
brought his action in the Court of Common Pleas for Oconee
County, S. C., against the said William Holden, as the ad-
ministrator of the estate of Naomi Holden, deceased, and
also in his own right, the service of summons in which was
accepted in writing by William Holden, as said administra-
tor and as an individual. William Holden, as administrator
and in his own right, neither answered, demurred nor ap-
peared in said action. On the 6th day of October, 1892, in
regular term time, judgment was rendered in said action
against William Holden, as administrator, &c., of Naomi
Holden, deceased, for the sum of $8,919.38, and for a like
amount against William Holden, as an individual. Execu-
tions were issued under said judgments. Levies were made
upon certain pieces of real estate belonging to the estate of
Mrs. Naomi Holden, deceased, in October, 1892, some in
1894, and some in 1896. Sales were made of certain lands
of the intestate, and some of intestate's lands were purchased
by John D. Verner, some were purchased by Josiah Holden,
some were purchased by William M. Gossett, and some were
purchased by Thomas N. Hall and L. G. Gaston. These
purchasers entered upon the posession of their respective
parcels of land immediately after the sheriff's sale thereof to
them, respectively, under his deeds therefor, and the same
parties are still in possession of said land so purchased. All
the real estate in Pickens and Oconee Counties, not sold by
the sheriff, still remains in the possession of William Holden
and his children.

So on the 15th day of January, 1898, all the children of
Mrs. Naomi Holden, deceased, as plaintiffs, began their
action against William Holden, John D. Verner, J. P. Carey,
W. M. Hagood, the Seneca Bank, W. P. Anderson, William
M. Gossett, Josiah Holden, Thomas N. Hall and L. G. Gas-

ton, as defendants, alleging the foregoing facts, but claiming that the sales made by the sheriff of Oconee County under the judgment and execution thereon of J. D. Verner against William Holden, as administrator, &c., of Naomi Holden, deceased, are null and void, and that such lands so attempted to be sold, together with all the other lands of the *intestate's* estate, were seized by them and William Holden in fee simple as the heirs at law of Mrs. Holden, deceased, and they demanded partition. It should have been stated that the defendants, J. P. Carey, W. M. Hagood, Bank of Seneca, are made parties because they hold claims by lien against the defendant, William Holden. The defendants, John D. Verner, W. P. Anderson, William M. Gossett, Josiah Holden, Thomas W. Hall and L. G. Gaston, deny that the lands purchased by them at the sheriff's sale under the judgment of John D. Verner, as plaintiff, against William Holden, as administrator of the personal estate of Naomi Holden, deceased, and against him as an individual, are now the property of the plaintiffs and the defendant, William Holden, as heirs at law of Naomi Holden, deceased, and that such lands remain for partition amongst such alleged heirs at law; but, on the contrary, the defendants allege that such lands are now owned and held by them as their own, respectively, freed from any and all rights or claims thereto by such heirs at law, or any one or more of them. The action of the children of Mrs. Naomi Holden was begun in Pickens County, as some of them resided in that county (Pickens), and some of the lands were there located. But upon motion of the defendants, John D. Verner and the others in like plight with him, an order by consent was passed transferring the record to the county of Oconee, where their lands were located, for trial in the latter county. Soon after the actions were transferred to Oconee, an order was passed by consent that "trial by jury being waived," all the issues of law and fact were referred to J. W. Holleman, Esq., as master, with leave to report any special matter. It was admitted by all the counsel engaged that Naomi Holden, at the time of her death, was the owner in

fee of the lands in dispute in the case, and that she is the common source of title from whom all the parties to this action are claiming title. On September 28th, 1899, "It was admitted by all the parties that the administrator of Naomi Holden is a proper party to this suit in his representative capacity, and it is agreed that the summons and complaint be so amended as to make him a party; that his answer be filed as of this date." Such answer of William Holden, as administrator of the personal estate of Naomi Holden, deceased, was accordingly made, wherein he admitted that he was such administrator. Testimony was taken before the master in regard to the judgment, execution and sales in the action of John D. Verner, as plaintiff, against William Holden, as administrator of the estate of Naomi Holden, deceased. "It was admitted and agreed by counsel for appellants and respondents that the levies on the several tracts and lots of land by the sheriff under said execution, the advertisement of the same for sale, and the deeds to defendants, John D. Verner, Josiah Holden, Thomas N. Hall, L. G. Gaston and W. M. Gossett, were regular in all respects, and no question is raised as to the regularity of any of said official acts of the sheriff in making levy, advertisement, sale or conveyance of the several lots and tracts of land to said defendants respectively."

After hearing all the testimony, the admissions and the pleadings, the master, J. W. Holleman, Esq., found amongst other things as follows: "That Naomi Holden died at the time and survived by her husband and her children as stated in the complaint, and that she was seized of the real estate as set out in the complaint. That William Holden, on 12th October, 1891, was duly appointed the administrator of the personal estate which belonged to her estate at her death, and letters of administration were duly issued to him. He thereupon entered the discharge of his duties as such administrator, and is still such administrator." That John D. Verner began his action against William Holden, as such administrator, and against such William Holden, as an individual,

to obtain judgment against such William Holden, as said administrator and as an individual, for the $8,500 due by Naomi Holden in her lifetime to her husband, William Holden, which were duly transferred to the said John D. Verner by written assignment, which culminated in a judgment against said William Holden, as administrator as aforesaid and as an individual, for $8,919.38 and costs, on the 14th day of October, 1892. That the real estate as described in the answer of John D. Verner, W. M. Gossett, Thomas N. Hall, L. G. Gaston and Josiah Holden was sold by the sheriff under the execution issued under said judgment, which execution "commanded said sheriff to satisfy said judgment out of the personal property belonging to the estate of Naomi Holden, deceased, and if sufficient personal property cannot be found belonging to said estate, then out of the real property belonging to the estate of Naomi Holden." That the defendants above named purchased the same, took deeds therefor, went into immediate possession and remained in possession until now, said sales of land took place in the years 1894 and 1896. At the time of the death of Naomi Holden, all her children (the plaintiffs) were minors. That no partition was ever had of said lands amongst the said heirs at law, nor any fact tantamount thereto. That William Holden's possession of said lands was as administrator, and he paid debts of his intestate with rents. He finds also that the judgment of Peden & Anderson, now owned by Anderson, is in proper condition. As conclusions of law, he finds the judgment of John D. Verner is effective from all collateral attack; that the administrator had a right to waive his privilege of twelve months from suit (of course, in case of fraud, it would be different). That the plaintiffs are bound by the judgment taken by J. D. Verner against their mother's administrator; he finds no irregularities in the judgment nor in the levy and sales thereunder. He holds the titles of the defendants as purchasers valid, and recommends that the complaint as to such defendants be dismissed. The plaintiffs and defendant, William Holden, excepted to the master's

report, and it is deemed important that we have the text of these exceptions before our eyes for a future purpose, and, therefore, we reproduce the plaintiff's exceptions and then the defendant's, William Holden, to wit:

"1. The master erred in holding that in this case the burden of proof herein rests upon the plaintiffs to show that they, as heirs at law of Naomi Holden, deceased, were in actual and exclusive possession of the lands in dispute at the time of the alleged judgment against the administrator of Naomi Holden, deceased, was obtained and sale of the lands thereunder had, it being respectively submitted that the said burden rests upon the defendants, who claim title thereunder.

"2. In not holding as a matter of fact that the evidence in this case shows that at the time said judgment was alleged to have been obtained and sale thereunder had, the plaintiffs herein and the defendant, William Holden, were in the actual and exclusive possession of said lands, and in not holding as a matter of law that the plaintiff in execution had, therefore, no right to sell any of the said lands thereunder, and that said sales were, therefore, void and passed no title to the purchaser or purchasers.

"3. In not holding that the judgments under which the purchasers at said sale purchased never acquired any liens on said lands for the reasons aforesaid, and that the heirs at law of Naomi Holden, deceased, were not parties to the said suit, and, therefore, not bound by said judgments.

"4. In not holding that the judgment and execution in this case, and under which defendants claim title, did not run against the administrator *de bonis testatoris,* and was, therefore, no authority to sell lands of Naomi Holden, deceased.

"5. In not holding the judgment under which certain defendants claim title to the lands in dispute void, in that the record shows upon its face that the suit was brought within the period inhibited by the statute from bringing suits by creditors against administrators.  See sec. 2332 of Rev. Stat. of 1893.

"6. In not holding as a matter of fact that there was collu-

sion between the defendant, John D. Verner, and the administrator of Naomi Holden in obtaining said judgment, and in not holding, therefore, as a matter of law, that the defendant, John D. Verner, could acquire no title thereunder.

"7. In not holding that the defendants, nor any of them, cannot hold the lands in dispute, for the reasons that the evidence shows that the lands were worth not exceeding $1,000 at the time of the alleged sales, and were exempt from sale under homestead laws of this State.

"8. In not holding that as to heirs at law of Naomi Holden, deceased, the notes which the defendant, John D. Verner, claims to have obtained his judgment upon—being the judgment under which the lands were sold—were barred by the statute of limitations, and were void because they were not such contracts as Naomi Holden, being at the time a married woman, could lawfully make; and in not holding that said heirs at law could make such a defense in this action, and especially as against the defendant, John D. Verner, who had notice thereof.

"9. In not holding that the judgment of defendant, W. P. Anderson, proven in this case against Naomi Holden, is void as to the plaintiffs in this case, for the reason that it shows upon its face that the plaintiffs were not properly served in the suit against them under which said judgment was obtained.

"10. In not holding that the lands described in the complaint were subject to partition among the heirs of Naomi Holden, as alleged therein, and in not recommending that the lands be sold and the proceeds divided among them, as prescribed by law, subject to such liens as was proven against the interest of William Holden, to wit: The mortgage of J. P. Carey, Seneca Bank and Wm. Hagood.

"11. In not holding that plaintiffs had established all the material allegations of their complaint, and were entitled to the relief prayed for.

"12. Because the master erred in holding that the testimony failed to show that William Holden was in possession

for himself as heir at law and the other heirs at law, but does show that he was in possession as administrator, qualified possession, and used the rents for the estate.

"13. Because the master erred in holding that the commencement of the action against the administrator before twelve months had elapsed after the grant of letters of administration, did not render the judgment void on its face, but only voidable, and that the administrator could waive his right to resist the suit on that ground.

"14. Because the master erred in denying the right of homestead to the plaintiffs and the defendant, William Holden.

"15. Because he erred in finding the judgment of W. P. Anderson regular and valid.

"16. Because he erred in holding the title to the several tracts of land—described in the separate answers of John D. Verner, Wm. M. Gossett, L. G. Gaston, Thomas N. Hall and Josiah Holden—to be good.

"17. In finding balance due on judgment of John D. Verner to be $1,639.18, and its priority."

The defendant, William Holden, as administrator, filed the following exceptions:

"1. Because the master erred in holding that the possession of this defendant of the lands in dispute was as administrator of the estate of Naomi Holden; whereas, he should have held that he, together with the other heirs at law of the said Naomi Holden, were in the actual and exclusive possession of the lands in dispute, claiming the same as heirs at law of Naomi Holden, from her death till the sale of same by the sheriff of Oconee County, and that a sale of said lands by the said sheriff was null and void, and carries no title.

"2. Because the master erred in not holding that this defendant was entitled to a homestead, as to his interest in the lands of his deceased wife as to the judgment against him individually, and that said sales were void as to him, his homestead right preventing the judgment under which said

sales were made from being a lien on his interest in said lands.

"3. Because the master erred in holding that this defendant was not entitled to a homestead.

"4. Because the master erred in finding any amount due on J. D. Verner's judgment or W. P. Anderson's judgment, or any priority for them."

The cause then came on to be heard before his Honor, Judge Ernest Gary, at the November term of the Court of Common Pleas for Oconee County, on the exceptions to the master's report.    When Judge Gary filed his decree on 6th December, 1899, he held that, *first,* William Holden was not the administrator of the personal estate of Naomi Holden, deceased, and *second,* that the lands having been in the exclusive possession of William Holden and his children from the moment Mrs. Naomi Holden departed this life until ousted of such exclusive possession by the purchasers under the sheriff's sales of said lands, hence the sales made by the sheriff conferred no title upon the purchasers of said lands.    He, therefore, adjudged as follows : "I, therefore, hold that the titles under said judgment (J. D. Verner *v.* Wm. Holden, as administrator of Naomi Holden, deceased, and as an individual) of John D. Verner are invalid as against the heirs at law of Naomi Holden, and that they are entitled to have the same (lands) partitioned.    The judgment is assailed on several other grounds, but having arrived at a satisfactory conclusion, I think it unnecessary to pass on them.    It is, therefore, ordered, that the exceptions of the plaintiffs and such of the defendants as have filed exceptions to the master's report be, and the same are hereby, confirmed, in so far as they are consistent with the views announced in this decree, and that the report of the master is hereby reversed, in so far as the findings of fact and conclusions of law are inconsistent with the conclusions announced in this decree.    It is further ordered, that the master in equity for Oconee County do sell, on salesday in February next, or on some convenient salesday thereafter, all of the lands in dispute in this cause belonging to the

estate of Naomi Holden, situate in the county of Oconee, after due and legal notice of said sale for twenty-one days, according to the rules of this Court, upon the following terms: * * * Leave is hereby granted for any of the parties to this suit to apply at the foot of this decree for any further order that may be necessary to carry out the views herein announced."

From this judgment, the defendants, John D. Verner, William M. Gossett, Josiah Holden, Thomas N. Hall and L. G. Gaston, have appealed. But before referring to the grounds of appeal, it might be well to insert the agreement of all the counsel as to the scope and effect of Judge Ernest Gary's judgment: "It is hereby agreed by and between all of the attorneys in the above stated case that the decree rendered by Judge Gary in said case has only passed upon the rights of the plaintiffs and of the defendants who claim to have bought lands at the sheriff's sale under the judgment of John D. Verner *v.* William Holden, individually and as administrator of the estate of Naomi Holden, and has not considered or determined the rights of any of the other defendants in the said case; and that the rights of all of the other defendants are to be determined by such future proceedings in this case as may be necessary in the event that the decree of the Circuit Judge is confirmed; and the time for any of the said defendants to appeal from this decree, if they should be advised that the decree of Judge Gary affects the rights and defenses set up by the defendants in this case, except those who have already appealed from said decree, be extended until the final determination of this case. March 16th, 1900." (Signed by all counsel in case.) Whereby it is manifest that the parties contesting have determined to restrict the operation of Judge Gary's judgment within those limits, to wit: the rights of the plaintiffs and of the defendants, who claim to have bought lands at the sheriff's sales under the judgment of John D. Verner against Wm. Holden, individually, and as administrator of the estate of Naomi Holden. We will not reproduce the exceptions in terms;

they are intended to assail the judgment of Judge Gary on
the two findings and conclusions which we have already set
forth herein.    In the abundance of caution, however, we will
direct the judgment of Judge Gary and the exceptions thereto
reproduced in the report of this case.

The exceptions complain that the learned Circuit Judge
overlooked the fact that the master in his report distinctly
found that William Holden was duly made the administrator
by the probate judge of the county wherein the intes-
tate resided; that he qualified as such on the 12th
October, 1892, and has so remained until to-day.
The very object of exceptions is to point out the exact errors
of law and fact made in the report of a master or a decree of
a Circuit Judge.    All the issues of law and fact were com-
mitted to the decisions of J. W. Holleman, Esq., as master.
When his report was made, it was binding on all the parties
unless excepted to, and such exceptions are required to set
out in what particulars there was error committed by the
master.    Unless exceptions are taken, the Circuit Judge
must make the findings of fact and the conclusions of law of
the master the basis of his judgment or decree.    It is not in
the power of the Circuit Judge to disregard the machinery
provided by law for the conduct of business in our Courts.
When parties litigant confide the trial of all issues of law and
fact to the master, they are entitled to have the report of such
master on all such issues confirmed by the judgment of the
Circuit Court, unless excepted to; and in the event of excep-
tions, the Circuit Judge is limited to those exceptions, and he
cannot of his own motion go outside of these exceptions.
This is not to be viewed as a hardship to the Circuit Judge no
more than the requirements of our Constitution that the
Supreme Court of the State shall not pass upon facts in a
law case.    Inasmuch as the master passed directly upon the
validity of the administratorship of William Holden and held
that he was such administrator, and there were no exceptions
to such findings of fact and conclusion of law by the master,
it is not an open question, so far as the parties to this action

are concerned, whether such finding of the master is conclusive. And it is just as imperative upon the Circuit Judge.

But apart from this point, which we hold to be conclusive, it is not so certain that the action of the probate judge in the matter of the appointment of Wm. Holden as administrator is not conclusive. Reliance is sought to be placed upon the case of *Hartley* v. *Glover*, 56 S. C., 69, as authority for the Circuit Judge in declaring the administration of Holden void. But a reference to that case will show wherein the difference exists; for in the case cited, it was where Mr. Assman, as clerk of Circuit Court, had applied for letters of administration upon a *derelict estate,* under the statute of 1873 (sec. 2034, Civil Statute Law of South Carolina, Rev. Stat., vol. 1). In such statute it was made imperative upon the probate judge to publish a notice for forty days in some newspaper * * * and after such notice to grant such letters, *but it appeared upon the face of the record itself that only about thirty days had expired,* and this Court held that it was necessary in order for the probate court to have jurisdiction in the case of administration to be granted in derelict estates, that such forty days previous notice has been given. In the case at bar, under section 2023 of vol. 1 of the Revised Statutes of this State, it is made the duty of the probate judge to grant administration to the husband of his deceased wife, if he applies therefor, and in section 2027 it is provided: "The judge of probate shall grant administration in the following manner: After requiring the person or persons applying therefor to file a petition in writing, he shall issue a citation to the kindred or creditors of the intestate or person deceased, to show cause, if any they have, why administration shall not be granted to the person or persons applying therefor, and he shall cause the same to be published on the court house door of the county in which his office is, for two successive weeks, and also by having it printed once a week for two successive weeks, after it has been issued, in some public gazette, if any be published, in the county." It is suggested that in the record produced by the

probate court, it does not appear affirmatively that the probate judge published notice of the application by Holden for letters of administration. It must occur to any one that there is quite a difference between a record which shows upon its face that only thirty days notice of application was had, when forty days notice was required, and one in which there is no paper produced showing that notice for fourteen days had been given. One shows a positive or affirmative violation of the statute, and in the other there is no showing as to publication at all. One is positive and affirmative, and the other is negative. In the latter it may be shown that such notice was given, in the former the record could not be contradicted. In the former it is physically impossible to make thirty days become forty days. In the case at bar, the bond is there, the appointment is there, the letters of administration are produced. Why may we not assume that this probate court being a court of record, invested by the Constitution of 1868 with jurisdiction *in all matters* testamentary and *of administration* (see sec. 20, art. IV., Con. 1868,) and also a court of which it has been said: "The court of probate in its jurisdiction is not an inferior court, but is so important that the same rules of construction are to be made in favor of its jurisdiction and the effect of its record as is applied to courts of general jurisdiction. Herm. Estop., p. 148, section 140." *Thomas* v. *Poole,* 19 S. C., 336. See, also, in *Turner* v. *Malone,* 24 S. C., 398, it is declared that "the court of probate, though of limited jurisdiction, is a court of record with very large powers, and as to proceedings clearly within its jurisdiction, is not to be regarded as an inferior court in respect to the dignity of its records." We would have no hesitation in agreeing with the Circuit Judge in his view of the invalidity of the record of probate court in showing the appointment by that court of William Holden as administrator of Naomi Holden, deceased, if there was anything in the records of that court *showing affirmatively* that notice of fourteen days was not given by publication. In such an event, the case of *Turner* v. *Malone, supra,* when it did show affirmatively that

service had not been made; or the case of *Finley* v. *Robertson,* 17 S. C., 438, when it was shown by the record affirmatively that service of summons was accepted *for* the infant defendants; or in the case of *Hartley* v. *Glover,* 56 S. C., 69, where it appeared affirmatively upon the record that notice had not been published for forty days, but only thirty days, would apply. Here there is no testimony that such notice was not published; only *an absence of such statement from the record.* If in the case at bar the plaintiffs had pleaded that the appointment of their father as the administrator was procured from the probate court without any publication of the fourteen days notice to heirs or creditors, and the proofs had been that the office or court of probate had been searched and no such notice had there appeared, or that no such notice had been published in the newspaper at the time required by the statute, then the Circuit Judge would have been right, but no such allegation appeared in plaintiff's complaint, nor was there any such proofs, as we have just described, offered. *Turner* v. *Malone, supra,* treats of what is void and what is voidable in judicial records. So that even from this second consideration (which is not necessary to our holding the Circuit Judge in error), we think there was error in the Court below.

Second. As to the "exclusive holding" of the heirs at law of Mrs. Naomi Holden, deceased, upon her death until the purchasers at the sale of her lands under the judgment in the action of John D. Verner *v.* Wm. Holden, as administrator and as an individual, rendering the claims of the heirs at law valid; consider these dates: Mrs. Naomi Holden died 30th June, 1891; Wm. Holden appointed administrator of her estate 12th October, 1891. Mrs. Holden, the intestate, thus appears to have died between the dates fixed by law, when all her crops were assets in the hands of her administrator. Then her lands could not be in the hands of her heirs at law during the year 1891, but were in law in the hands or under the control for that year of her administrator, Wm. Holden. On 14th October, 1892, exe-

cutions were issued under the judgment against William Holden, as administrator of Mrs. Naomi Holden, deceased, and also against the said William Holden, as an individual, and under the law executions are liens on lands as soon as judgment is entered up, if such executions are then issued; so, therefore, these judgments were liens upon all the real estate of Mrs. Naomi Holden on the 14th October, 1892. As Mrs. Naomi Holden died intestate, the law threw title to William Holden, her husband, for one-third of said lands, and this execution issued under the judgment, and the judgment itself against him individually, were liens upon his own third part of said lands on the 14th October, 1892. When did William Holden ever render up his possession of his wife's lands, which he took by virtue of his administration on 12th October, 1891, but which the law refers back to the death of his wife, the 30th June, 1891? This Court is well aware that under certain circumstances it is permitted to heirs at law to assert their rights to exclusive ownership of the lands which belonged to their ancestor (whose title is devolved upon them by operation of law); *Jones* v. *Wightman,* 2 Hill, 579; *Bird* v. *Houze,* Speer Eq., 250; but it is well aware that these decisions recognized *D'Uprey* v. *Nelson,* 1 Brev., 289, and *Martin* v. *Latta,* 4 McC., 128. We greatly fear that there is gradually creeping into the legal mind of this State an idea that very slight causes will operate to defeat the right of creditors of an intestate to have the lands of such intestate sold under a judgment against an administrator, which is recovered soon after the twelve months have expired, during which, under our statute, an administrator is protected from suit. In the case at bar, the creditor sued a little more than a month before the twelve months had expired, reckoning from the date of administration, 12th October, 1891, during which the administrator was protected from suit. On the 14th October, 1892 (just two days after twelve months had expired), judgment was entered up, and on the 17th October, 1892, an execution was levied upon lands of the intestate. Now it is patent that most of the

34—58

cases which seem to sustain an heir at law when he occupies intestates lands—such as *Bird* v. *Houze, supra; Jones* v. *Wightman, supra; Valk* v. *Vernon,* 2 Hill Ch., 257; *Huggins* v. *Oliver,* 21 S. C., 147—all seem to point to something akin to *laches* on the part of the creditor, whereby personal assets have been done away with by administrator or executor. There is in none of these cases a denial of the fact that for nearly one hundred years it has been the law in this State that, under a judgment obtained by a creditor against an administrator, lands of an intestate in the hands of intestate's heirs may be sold to satisfy such judgment. *Huggins* v. *Oliver, supra,* where Chief Justice McIver sought to make clear the law on both these points, and, also, so does *Rogers* v. *Huggins,* 6 S. C., 356. There can be no case found where the possession of an administrator, who is also heir at law, and *seven infant heirs at law,* for about three years from the death of an intestate (one of which years was when suit could not be brought), was held to ripen into a right to oust purchasers of such lands at sheriff's sales under a creditor's judgment against the administrator of an intestate whose lands were sold. We must overrule this proposition of the Circuit Judge.

But, apart from all these things, the judgment of the Circuit Court cannot stand, because, certainly, the defendants, here being considered, had the right to have allowed them the one-third part of the lands to which William Holden was entitled as an heir at law of his deceased wife.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the action remanded to the Circuit Court for a new trial.

MR. JUSTICE JONES, *concurring.* I concur in the conclusions reached in the opinion of Mr. Justice Pope. While it is true, in a case of this kind, the Court cannot review the findings of fact by the Circuit Court, yet if such findings are based upon or influenced by some error of law, the judgment based upon such finding is reversible for error of law. The

conclusion of the Circuit Court that the heirs at law of
Naomi Holden were in actual and exclusive possession of the
land at the time of the rendition of the judgment against
William Holden, as administrator, was not based wholly
upon the evidence, but was necessarily influenced by his view
(1) that William Holden was not the administrator of
Naomi Holden, and (2) that the burden of proof rested on
the defendants to show that the heirs at law were not in the
actual and exclusive possession of said land. I concur in the
view of Mr. Justice Pope, that it was error of law for the
Circuit Court to reverse the finding of the master, that Wil-
liam Holden was duly appointed as administrator of Naomi
Holden. Entertaining the view that William Holden was
not the administrator, it was natural for the Circuit Court to
conclude that the master was in error in holding that William
Holden was in possession as administrator. In my opinion,
also, the Circuit Court erred as matter of law in holding that
the burden of proof was upon the defendants to show that the
heirs at law of Naomi Holden were not in the actual and ex-
clusive possession at the rendition of the judgment. It is
true, that when plaintiffs showed a common source of title in
Naomi Holden, and that they were her heirs at law, this cast
the burden upon the defendants; but when it appeared that
defendants were in possession as purchasers at a sale under
a judgment against the administrator of Naomi Holden, this
was a valid defense, unless plaintiffs should show that at the
rendition of such judgment, they were in exclusive and
actual possession as heirs at law, and so were not bound by
the judgment. Ordinarily, a sale of land of an intestate
under judgment against the administrator carries the title of
the heirs at law. An exception to this rule is where the heirs
at law are in the actual and exclusive possession at the ren-
dition of the judgment and the sale. But to avail themselves
of this exception, plaintiffs must show the facts upon which
the exception is based as against purchasers in possession.

Mr. JUSTICE GARY, *dissenting.* The issue as to "exclu-

sive possession" was properly triable by a jury on the law side of the Court. The waiver of that mode of trial does not give this Court the right to review the findings of fact by the Circuit Judge. I, therefore, dissent from the opinion of Mr. Justice Pope.