15239

PATTERSON *ET AL.* v. COURTENAY MFG. CO. *ET AL.*

(14 S. E. (2d), 16)

Mr. *Stephen Nettles,* for appellant, American Mutual Liability Ins. Co.,

*Messrs. H. Campbell Miller* and *S. Eugene Haley,* for respondents,

*Messrs. Hughs & Hughs,* for Courtenay Mfg. Co.,

April 2, 1941.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

Wade Patterson and William Gibbs, well diggers by trade, were engaged in deepening a well on a farm, the property of Courtenay Manufacturing Company. In this work they were using dynamite to blast rock at the bottom of the well. There was an explosion which practically destroyed the sight of both of them. They made claim to the Workmen's Compensation Commission, which claim was heard first by Commissioner Duncan, who took testimony and made an award in favor of both of them. He found that the blindness of the men was due to an accident arising out of and in the course of their employment by Courtenay Manufacturing Company, and that each of them was entitled to recover from the employer and from the carrier, the action of the single commissioner was reviewed by the full commission, which in due time filed its opinion which affirmed the findings of fact and conclusions of law of Commssioner Duncan.

From the award the carrier appealed to the Court of Common Pleas; the Courtenay Manufacturing Company did not appeal. The appeal was heard by Hon. G. B. Greene, presiding at the Court for Oconee County, who filed an order sustaining the award.

The appeal comes to this Court on the following exceptions:

"1. That the claimants were independent contractors and not employees at the time of their injuries.

"2. That the claimants' injuries did not arise out of and in the course of their employment.

"3. That the carrier did not undertake, either under the terms of its policy of insurance with the mill or under the

applicable statutory law, to insure these claimants against the injuries they sustained.

"4. That the employment of claimants was casual and not in the course of the business of the mill.

"5. That under the terms of the policy of insurance and the applicable statutory law claimants were excluded from the benefits thereof as farm laborers.

"6. That as between the mill and the carrier, any liability here is that of the mill, because

"(a) Claimants were working for the mill as independent contractors at the time of their injuries, and the mill could not thereafter alter their status, to the injury of the carrier, by putting their names on the payroll and paying them wages.

"(b) The insuring clauses of the policy do not cover the type of work being done by claimants, nor do they come within any of the classifications mentioned in the schedule of operations."

We do not find it necessary to pass upon each of these exceptions. Those that are not specifically considered by us are to be considered affirmed.

We find ourselves unable to concur with the view of Judge Greene that the claimants were not casual employees *and were engaged in the course of business of the employer*. He said this: "The appellant in its second question makes the point that the commission should have held that claimants were excluded from the benefits of the Workmen's Compensation Act for the reason that as employees they were both casual and not engaged in work in the course of business of the employer. Under the statute, for an employee to be excluded, his employment must be *'both* casual and not in the course of the trade, business, profession or occupation of his employer.' The evidence shows that the employment of claimants was casual in the sense that they were engaged for a specific piece of work and not generally employed. *It does not appear, however, that the claimants were 'not engaged in the course of the business of the employer.'* * * *." (Italics added.)

Then the order goes on to say:

" *  *  *  but on the contrary it appears from the evidence that claimants were engaged in improving a well which was the water supply for a house occupied by the Dyars, three members of the family being operatives in the mill. The Courtenay Manufacturing Company, in common with the textile industry generally in the South owns and furnishes to its employees residences in close proximity to its plant. This, of course, is for the convenience of its employees, but more particularly for the more efficient operation of the mill. Any operation necessary to the building or maintenance of these dwellings would seem logically to be in the course of the business of the manufacturer. If repairing the plumbing in one dwelling occupied by employees would be in the course of the business of the manufacturer, no logical reason appears why the repair of a well as the water supply for another dwelling occupied by other employees would not also be in the course of business of the manufacturer.

"It is urged by appellant that since Mr. Dyar was a tenant farmer and drew the water supply for farming purposes from the well, that the repair work on the well was a farming operation and outside of the course of business of the employer. Such a question might arise had the use of the well been exclusively for farming purposes. But a water supply, and in this case the well, was essential to render the dwelling fit as a habitation for the three members of the Dyar family working as operatives in the mill.

"The repair of the water supply of whatever kind for a dwelling furnished employees of the mill in accordance with an established practice of long standing being in the course of the business of the employer, and the claimants being engaged in such repair work at the time of the injury, it follows that the finding of the commission that the claimants were not casual employees not (?) engaged in the usual course of business of the employer must be sustained."

We have given thus fully the holding of the Circuit order because we think therein lies the crux of the error on this point. If it be admitted that the claimants were not casual laborers, that would not entitle them to an award unless it also appears that their injuries were received while they were engaged in work in the course of the business of the mill. Or, stated conversely, if it be admitted that the work of claimants was not casual, it is necessary, in order that claimants be given an award under the provisions of the Workmen's Compensation Act, Section 2(b) of Act No. 610 of the Acts of 1936, 39 St. at Large, page 1232, that the employment is not casual and is in the course of the trade, business, profession or occupation of his employer.

Appellant's contention is that the evidence plainly shows that the claimants when injured were not in the course of the trade, business, profession or occupation of the employer. In its declaration of the character of its business, included in the policy, the employer states that it is a corporation engaged in cotton spinning and weaving at Newry, S. C. The Circuit Decree places its holding that the claimants were in the employ of the Courtenay Manufacturing Company, within the provisions of the Workmen's Compensation Act flatly upon the ground that the mill owns farm lands composed in the aggregate of some 1,200 to 1,400 acres; that one of these farms is rented to Mr. Dyar for a share of the crops, that the well where the accident occurred is on this farm and that three of the daughters of Mr. Dyar are employed in the cotton mill. The assumption of the circuit order is that the mill is under obligation to furnish houses and water to its employees, and that therefore because of the fact that Mr. Dyar's daughters live with him in this house and work in the mill the men at work in the well were employed in the course of the trade, business, profession, or occupation of the cotton mill, which is the spinning and weaving of cotton cloth.

There is not a scintilla of evidence that the house was furnished to Mr. Dyar because the daughters who lived with

him were employed in the mill. It is not correct to say that a cotton mill is under obligations to furnish dwelling houses to its employees. Those who furnish them charge a rental which is deducted from the wage envelope of the employee. The dwelling houses so furnished by this mill are congregated in the mill village and water and sewerage facilities are supplied by regular systems. There is no evidence that all employees live in mill houses, and there is not a particle of evidence that Mr. Dyar pays rent for the house, or that his daughters pay him or the mill for occupying it. The evidence shows that Mr. Dyar works the farm on shares with the mill and the reasonable inference is that he occupies the house under that contract.

In the case of *Ward v. Ocean Forest Club*, 188 S. C., 233, 198 S. E., 385, the question here being considered was not involved nor was it decided. The only issue was whether the employment was or was not casual. The case has no bearing here.

The case of *Boseman v. Pacific Mills*, 193 S. C., 479, 8 S. E. (2d), 878, was one in which the claimant was engaged in painting a water tank of the Pacific Mills when he was injured. The Industrial Commission found as a fact and as a matter of law that the work the claimant was doing when injured was within the provisions of the Compensation Act, because the work was in the interest of the mills in keeping the tanks which contained the water supply of the mills in safe condition. On appeal Circuit Judge Dennis sustained this contention, holding that the case was controlled by the case of *Marchbanks v. Duke Power Company*, 190 S. C., 336, 2 S. E. (2d), 825, 831. In the *Boseman case* [193 S. C., 479, 8 S. E. (2d), 880] it was held: " *** The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be completed as soon as possible so that its every day, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. * * *"

The facts of the *Boseman case* clearly distinguished it from the case with which we are dealing, and that case cannot be held to be in support of the conclusion reached in the Circuit order.

In the case of *Marchbanks v. Duke Power Company et al., supra,* the claimant, while engaged in painting a pole which belonged to the Duke Power Company, was injured. It appears from the decree of Judge Oxner, which was affirmed by this Court, that the Duke Power Company is engaged extensively in the business of generating, transmitting and selling electric current and that this business necessitates the erection and maintenance of poles and transmission lines throughout the City of Greenville. The power company set up among other defenses, that the work being done by claimant when injured was not a part of the power company's trade, business or profession. Judge Oxner in his order said: "In the present case it is conceded that the maintenance of defendant's transmission lines was an important and essential part of its trade or business and it is not disputed that such maintenance work was ordinarily performed by defendant's regular employees. To my mind the painting of these poles was a part of such usual and necessary maintenance work. It appears that in connection with said work it was necessary to scrape the rust from the bases of said poles and to apply a coat of some rust preventive thereto, this part of the work being done by the defendant's regular employees. I can see no material difference between the work being done by the plaintiff and that being performed by the defendant's regular employees, which unquestionably was a part of defendant's business trade or occupation. No particular skill or special equipment was necessary to paint these poles."

In considering the holding of Judge Oxner's order on the issue whether at the time of his injury the work in which the claimant was engaged was a part of the trade, or occupation of Duke Power Company, this Court said: "We think that appellant is hardly in position to raise this

issue. The statements of its complaint would seem to preclude it from doing so. Paragraph II thereof sets forth the following: "That the defendant, Duke Power Company, for compensation, furnishes to the City of Greenville electricity for lighting and power purposes, operates for hire in the City of Greenville and surrounding vicinity busses propelled by electricity transmitted by it, and, for compensation, furnishes to private citizens and corporations electricity for lighting and other purposes in and about the City of Greenville; that, *in order to carry on its business as dispenser and vender of electricity as aforesaid, and for the operation of its electric busses as hereinabove stated, it is necessary for the said defendant corporation to construct and maintain many wires over which electric current is transmitted,* many of which wires carry high voltage; that, at regular intervals, by and alongside the principal streets of the City of Greenville, the defendant corporation has erected metal posts to which said wires are attached; *that, in order to protect said posts from the weather and to give a more pleasing appearance thereto, the defendant corporation has, from time to time, caused said posts to be painted.*' (Italics added.)

"If this language of the complaint be true, and the appellant may not deny it, it is difficult to see how the power company could carry on its business if its lines of wires were not kept in sound condition, or how this could be done if the posts to which they are attached were not kept in safe and sound condition. Evidently it was necessary to this end that the poles be 'protected from the weather,' and the appellant was engaged about this work. He was employed by Coln to do it, and Coln had been employed by the power company. Surely it cannot be seriously argued that the unfortunate employee was not engaged in work 'which is a part of the trade, business or occupation' of the power company which it was undertaking to have performed."

It is too plain for doubt that the facts in the *Marchbanks case* are in such contrast to the facts of the instant case that

the *Marchbanks case* can furnish no support for the Circuit order herein appealed from.

In the case of *Ward v. Ocean Forest Club* [188 S. E., 233, 198 S. E., 388], *supra*, Mr. Justice Baker, delivering the opinion of this Court, said: "Of course, in this case, as in all other cases, the facts make the law, and while this Court is not bound in anywise by the decisions of the Courts of other states, such decisions are necessarily influencing if logical and in accordance with the apparent intent of the Legislature in the use of a word."

The case of *Burnett v. Palmer-Lipe Paint Co.,* 216 N. C., 204, 4 S. E. (2d), 507, 508, is in such apt accord with our instant case, in its relation to the facts and conclusions of law, as stated by the Supreme Court of North Carolina, that we venture to quote from the opinion of that Court at some length. It is a case under the Workmen's Compensation Act of that State. The plaintiff, Burnett, was employed by Mrs. D. K. Lipe, who was engaged in a business of which she was the sole owner, under the name of Palmer-Lipe Paint Company. The business carried on was that of a retail store together with painting, decorating and shop operations in connection with the store. The plaintiff received an injury while mowing the lawn at Mrs. Lipe's residence several miles from and unconnected with the store. The North Carolina Industrial Commission found the facts as to plaintiff's employment to be, "to drive the delivery truck, do the janitorial work at the store, and do the general janitorial work at the home of the sole owner of the Palmer-Lipe Paint Company, Mrs. Lipe, such as mowing the lawn, firing the furnace, cleaning the floors, and so on." That Burnett was paid through the store; that the injury arose out of and in the course of plaintiff's employment. The North Carolina Court said: " * * * Upon the record presented [to us] we are of opinion, and so hold, that the injury does not come within the provisions of the Act, that the Industrial Commission was without power to make the award against the appellant, the insurance carrier, * * *."

The North Carolina Act contains this definition of the nature of the employment not covered by its provisions: "Persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer." The Court said:

" *  *  * It is clear, we think, if the employer had been a corporation or partnership, of which Mrs. Lipe was an executive, an injury to an employee of the company while engaged in private and personal work for her, having no relation in character or location to the business of the company, would not have been compensable by the company or its insurance carrier under the Act. And we think the same reasoning would apply when the same person operates a business or industry, and also has personal service rendered in and around a private residence at another location.

"The terms of the insurance policy definitely exclude liability for injury received at the location and in the manner in which plaintiff was injured;  *  *  *."

It must be borne in mind that the business of Courtenay Manufacturing Company was and is the manufacturer of cotton into cloth. Its mill buildings and accessories; its mill village of employee's houses, its water, electric and sewerage plants cover only about 25 acres of its tract of 1400 acres, and those are located about a mile from the Dyar place on which is the well where the defendants were at work when injured.

It is clear to our minds that the claimants, when injured, were not engaged in work in the trade, business, profession or occupation of the employer, the Courtenay Manufacturing Company, within the provisions of the Workmen's Compensation Act.

The Circuit order has this to say: "By the third question the appellant presents the point that the claimants were not covered by the policy of insurance, because they did not come within any of the classes set forth in the schedule of operations attached to the policy marked Exhibit 'A-1.' "

The Circuit order holds that this contention cannot be sustained for the reason that: " * * * We have found and held that the repair of water supplies to dwellings furnished to employees is in the course of the business of the employer as being necessarily incident to its more efficient operation of its textile plant. It seems, therefore, that under the very language of Paragraph 6 of the contract of insurance quoted above, that claimants are clearly included."

Paragraph 6, to which the order refers, is as follows: "This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident, or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places."

We think the very language of Paragraph 6 shows that the claimants are not included.

However, the finding of the Circuit order is predicated upon the ground that the claimants were engaged in the business of the Courtenay Manufacturing Company because they were working in the well on the Dyar farm. We have held, and now hold, that this position is untenable as against the insurance company, for the reasons we have given. It follows that the order is in error thereabout.

The policy contains the following "Declarations" by the insured descriptive of the nature of its business and the schedule of its operations: "Item 3. That the insured was a corporation having its factory and place of business located at Newry, Oconee County, South Carolina, and that its operations were classified as per schedule attached."

An inspection of that schedule as attached to the record will disclose that the work in which claimants were engaged, namely, well digging, is not included, directly or by implication, therein. If the conclusion of the Circuit order that because they were engaged n the work of deepening

the well on the Dyar farm, they were "in the course of the business of the employer" is error, and we have and do so hold, it follows that its holding in this instance is also in error.

In the case of *Marchbanks v. Duke Power Company et al., supra,* this Court said (quoting syllabus) :

"1. Workmen's compensation laws should be given a liberal construction in furtherance of purpose for which they were enacted, and if possible, so as to avoid incongruous or harsh results.

"4. The Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment, and to cast upon the industry in which they are employed a share of burden resulting from industrial accidents."

We agree with the above utterance of this Court, but it has little application here.

Strange to say, the claimants in this case have little interest in the result of the present phase of the case. However it may result, they are assured of receiving the award allotted them by the Industrial Commission, which is against both the cotton mill and the insurance carrier. The cotton mill did not appeal from the action of the commission and as to the mill the award stands. It did not appeal from the award, but it has lent its aid to the effort to fasten upon the insurance carrier a liability under its policy which would relieve the mill from paying the award, so that the question of the liberal construction of the Compensation Act is at present of little concern to the claimants.

It is now a question of the construction of a contract between the cotton mill and the insurance carrier. This Court has repeatedly held that it must be bound by the terms of a contract brought before it for construction.

The Circuit order says: "In the notice of appeal appellant, by its sixth ground of appeal, makes the point that if there

is liability, it is that of the mill and not the carrier. The three principal questions have been answered contrary to the contention of appellant, which disposes likewise of this, because if claimants were employees engaged in the usual course of business of the employer and covered by the policy of insurance, any liability of the mill is likewise the liability of the carrier."

If the facts and conclusions of law sustained this statement, it would be a sound statement, but we have found that that is not the case.

The judgment of this Court is that the exceptions which challenge the holdings of the Circuit Court's order which affirm the conclusions of the Industrial Commission, that the claimants, when injured, were engaged in the business holds that the claimants are covered by the insurance carof the Courtenay Manufacturing Company within the provisions of the Compensation Act thereabout and that which rier's policy are sustained, and the order is reversed to that extent.

MESSRS. JUSTICES CARTER, BAKER, FISHBURNE and STUKES concur.