**HOME FIRE & MARINE INSURANCE COMPANY, Appellee,**

v.

**Julius B. TISDALE, Johnny M. Phillips and Herman F. McMahon, Appellants.**

**No. 8551.**

United States Court of Appeals
Fourth Circuit.

Argued April 3, 1962.

Decided May 10, 1962.

William J. Cronan, Jr., Charleston, S. C. (Morrison & Morrison, Charleston, S. C., on brief), for appellants.

---

Joseph R. Young, Charleston, S. C. (Hagood, Rivers & Young, Charleston, S. C., on brief), for appellee.

Before SOPER, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

The application of Johnny M. Phillips for an automobile liability policy in South Carolina with the Home Fire & Marine Insurance Company represented that his driver's license had never been suspended, when in truth, as the insured concedes, it had been. Exoneration from responsibility under the policy was sought on this ground by the insurer in a declaratory judgment action.

The insured answered that the insurer's agent had been told of the suspension when he took the application, and the company is now estopped to repudiate the contract. The insurer traverses this factual premise. The legal conclusion it likewise denies, pointing to policy stipulations which specifically purport to preclude estoppel through an agent's knowledge of changes in the policy unendorsed thereon and contradictory to its written terms.

The District Court, directing a verdict for the company, held the policy stipulations to prevail as a matter of law, despite the agent's foreknowledge of the falsity of the statement. As a diversity case the law of South Carolina controls, and the direction cannot be upheld.

The policy in suit was issued to Johnny M. Phillips by a company agent at Charleston Heights, South Carolina on application of his wife. At the instance of her husband, Barbara Phillips called at the agent's office on October 10, 1960 seeking a policy on a Ford Ranch Wagon which he was then purchasing from her brother-in-law. The questions on the application form were read to her by the agent and her responses typed on the blank by a clerk or stenographer. Among the questions was this one: "Has any operator had his license suspended or revoked?". The answer noted was "No".

This question was preceded by several in the same block: "Has any company cancelled or refused any operator insurance in the past three years?"; "Has any operator been involved in an accident in the past three years?"; and "Has any operator been cited for a traffic violation except parking in the past three years?". To each of these questions a negative answer was entered. Barbara Phillips then signed the application in the name of her husband and paid the premium.

A few days later an investigator for the company called at the Phillips' home. With the same application in hand he directed to them the inquiries thereon, which, of course, were those made at the agent's office. After the interview the answers remained as they were initially written. Within a week the policy arrived by mail, with the application as signed for Johnny M. Phillips by his wife attached to it.

A cursory glance satisfied Phillips of his coverage—he did not read the policy in detail. Immediately pertinent here are these conditions in the policy:

"14. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

"17. Declarations. By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Driving the insured car on or about December 2, 1960 Phillips was involved in an automobile accident resulting in

personal injury to another who then sued him for damages in a State court. The present action was brought by the insurer against Phillips, his vendor of the car and the injured person, for a judgment declaring the policy null and void "from the time of its issuance, [as] having been obtained by fraud". While other grounds were alleged for annulment of the policy, the District Court at trial and the company on this appeal relied on the falsity of the answer to the question covering the suspension of Phillips' license.

All the defendants answered denying the alleged invalidity of the policy. Phillips, in addition, counterclaimed for damages against the company for breach of the policy contract and fraud, averring that withdrawal of the policy's coverage caused him loss of time from work and expenditure of moneys in defense of the personal injury action as well as mental anguish and inconvenience. As we read the record, this counterclaim was in effect dismissed by the Court below when it held the policy invalid.

At trial Barbara Phillips testified that when the matter of the suspension arose, she explained to the agent that her husband's license had been suspended in 1957. The agent, she continued, told her "if it hadn't been in the past three years it didn't matter * * *", and directed entry of the answer "No". She further said that the same responses were given to the investigator who came to her home, and that he adopted the agent's construction of the interrogatory—the company was concerned only with the immediate three-year period. The Phillips were thus assured, the suspension occurring more than three years before.

Johnny Phillips—testifying to the latter occasion—stated that he expressly informed the investigator of the suspension. This investigator did not testify, and was never identified. The agent did appear and denied that either Johnny or Barbara Phillips had advised him at any time of the license suspension. He declared that the policy would not have been issued in that knowledge, and further disclosed that since the policy was for a preferred risk, it carried a premium lower than the usual charge.

 Rescission of a policy—the gravamen of the insurer's action—for misstatement of a representation can be obtained by an insurer in South Carolina only upon a showing that the accused statements were: (1) untrue; (2) known to the applicant to be false; (3) material to the risk; (4) relied on by the insurer; and (5) made with intent to defraud and deceive the company. Pilot Life Ins. Co. v. Pulliam Motor Co., 229 F.2d 912, 916 (4 Cir. 1956); see Metropolitan Life Ins. Co. v. Bates, 213 S.C. 269, 49 S.E.2d 201, 205 (1948). If the misstatement was a breach of warranty, the insurer need merely prove it untrue. Nix v. Sovereign Camp, W. O. W., 180 S.C. 153, 187 S.E. 175, 176 (1936). No distinction between representation and warranty is required now, however, since all five of the requisites just enumerated were met: admittedly the answer in respect to the license suspension was untrue; obviously it was material and was relied upon by the insurer; of course the falsity was known to the insured; and, if unexplained, his knowledge conclusively established evil intent. Johnson v. New York Life Ins. Co., 165 S.C. 494, 164 S.E. 175, 177 (1932).

Phillips denies, however, that the answer as noted on the application was ever given. Of course the application was really his, for he authorized his wife to get the policy for him; he accepted it and relies on it. He contends further, that the answer was the agent's interpretation of the insured's response, or was a misentry by the agent; he asserts that the insurer is charged with knowledge of what was told him by the applicant, and therefore the falsity in the answer was not the insured's but the company's. On these premises, the insured argues that there was an issue of fact for the jury, precluding a directed verdict, that is, whether the applicant unqualifiedly answered the question as it appears in the application.

The company, in rejoinder, says that the presentation of any such issue is explicitly excluded by Sections 14 and 17 of the policy quoted supra. Particularly, the insurer refers to Section 17—the "policy is issued in reliance upon the truth of [the] representations and that this policy embodies all agreements existing between [the insured] and the company or any of its agents relating to this insurance." Furthermore, turning to Section 14, the insurer states that it is not bound by any "knowledge possessed by any agent" so as to "estop the company from asserting any right under the terms of this policy. * * *" This conclusion the insured disputes. He avers the false answer is waived when the company issues its policy with full knowledge by its agent of uncertainties in the answer's truth.

 The decisive question, therefore, is whether the insurer is debarred from interposing the false answer in avoidance of the policy. Our research leads us to sustain the insured's right to invocation of waiver.

The South Carolina doctrine has been crisply put by its ultimate court in these words, Mickle v. Dixie Security Ins. Co., 216 S.C. 168, 57 S.E.2d 73, 76 (1950):

> "It has uniformly been held in this State that the knowledge of an agent acquired within the scope of his agency is imputable to his principal, and, if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such grounds of forfeiture."

Contrary to the company's contention, South Carolina has not deviated from this view. It is confirmed in such decisions as Ellison v. Independent Life & Accident Ins. Co., 216 S.C. 475, 58 S.E.2d 890, 893 (1950); Abercrombie v. Pilot Life Ins. Co., 214 S.C. 350, 52 S.E.2d 400, 402 (1949); and Able v. Pilot Life Ins. Co., 186 S.C. 26, 194 S.E. 628, 629

(1938). Earlier the Court had said that insulating provisions as those here advanced have "no greater sanctity" than other terms of the policy, and may similarly be waived. Gandy v. Orient Ins. Co., 52 S.C. 224, 29 S.E. 655, 656 (1898). In Welch v. New York Life Ins. Co., 183 S.C. 9, 189 S.E. 809, 814 (1936), over a dissent on the very point, the Court said:

> "An insurance company may not set up forfeiture on account of facts known to the agent of the company to be existing at the time of the making of the contract."

In this South Carolina is not singular. See Annot., 81 A.L.R. 833, 849 (1932); Annot., 148 A.L.R. 507, 511 (1944). Our court itself has heretofore enforced the South Carolina rule as we find it today. Pilot Life Ins. Co. v. Pulliam Motor Co., supra, 229 F.2d at 917. Indeed, the South Carolina court has gone further, declaring that the company is charged not only with notice of what its agent knew, but also with what he could have known once put upon inquiry by facts disclosed to him. Ellison v. Independent Life & Accident Ins. Co., supra, 58 S.E.2d at 893; Huestess v. South Atlantic Life Ins. Co., 88 S.C. 31, 70 S.E. 403, 406 (1911).

Cases cited by the company do not reveal a contrariety of precedent on this head. Donald v. Metropolitan Life Ins. Co., 200 S.C. 7, 20 S.E.2d 395 (1942) disallowed recovery on a policy, but it did not touch upon knowledge on the part of the agent of the misstatement in the insurance application. Adriaenssens v. Allstate Ins. Co., 258 F.2d 888, 891 (10 Cir. 1958) involved an automobile policy and a false answer to the same question asked here. But there—strikingly dissimilar—the agent had no knowledge of the falsity of the application statement, and was held by the court not obliged "under peril of estoppel" to inquire of the State whether the applicant had ever had his license suspended. This Court in Atlantic Life Ins. Co. v. Hoefer, 66 F.2d 464 (4 Cir. 1953) came to a conclusion opposite to the South Carolina holding. It was, how-

ever, adhering to the Federal doctrine antedating Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and is not precedent where now we must apply State law.

The assertedly contrary line of South Carolina decisions has never been applied in circumstances such as we have here. In those cases it is held in some situations that knowledge of the agent does not defeat the company in litigation in respect to misrepresentation in the application. But this holding is confined chiefly to tort actions against the insurer for deceit in issuing a policy afterwards cancelled for misrepresentation. The very case pressed upon us by the company, O'Connor v. Brotherhood of Railroad Trainmen, 217 S.C. 442, 60 S.E.2d 884 (1950), embraced an action of that kind. A non-suit was granted the company because the insured's "reckless disregard of his duty to avail himself of the opportunity and means at hand to protect his own interest * * * precludes recovery." 60 S.E.2d at 886. There the Court observed the distinction between contract and tort actions in South Carolina, 60 S.E.2d at 888:

> "Assuming, without deciding, that appellant could not have avoided the policy on the ground of misrepresentations in the application, it does not follow that respondent can recover damages in an action for fraud and deceit. In an action on the policy, the question would be whether insurer should be allowed to avoid the obligation of its policy, where the act upon which avoidance is sought is the act of the insurer through its agent. The insurer there would be asserting the claim of fraud. The question here is whether the respondent can base an action for fraud on misrepresentations as to the materiality of matters concerning his health when by the exercise of due care he would have known that these matters were material and had the effect of rendering the policy null and void."

Gordon v. Fidelity & Casualty Co., 238 S.C. 438, 120 S.E.2d 509, 513 (1961) reviews the fraud and deceit cases, showing unanimity with the O'Connor case, supra. Besides the fraud and deceit category, the South Carolina Court has noted a difference between our case and those wherein, after issuance of the policy and after a loss, a waiver of a condition subsequent is asserted, such as a reinstatement or proof-of-loss provision. There, defense is rested upon the language in the policy purporting to limit the authority of the agent to vary policy terms. That position is upheld on the ground that the insured has had the policy long enough to bind him to an awareness of his obligations after forfeiture or loss. Cauthen v. Metropolitan Life Ins. Co., 189 S.C. 356, 1 S.E.2d 147, 150 (1939). See Moore v. Pilot Life Ins. Co., 205 S.C. 474, 32 S.E.2d 757, 762 (1945). But in all these decisions the Court readily recognizes the rule by which we decide the present case.

Instantly it is of some significance that when the application was signed, and when Phillips and his wife were interrogated at home, neither of them had seen the policy. Yet, according to proof by the agent and an assistant manager of the company, it became effective immediately upon the signing of the application and payment of the premium on October 10, 1960. The District Court was of the same understanding. Thus the subsequent delivery of the policy added nothing to the rights of either party and there was no occasion for Phillips to refer to it.

True, the insured held the policy for a few weeks before the accident, with the opportunity to see that, as written, the representation concerning the license suspension was incorrect. He could also see, and might have understood, that the company by inclusion of Sections 14 and 17 did not consider itself bound by the agent's explanation and by the agent's knowledge of the inaccuracy of the answer. But these circumstances can be

used by the company only as subsidiary facts toward proving the answer and its unequivocal character. For, as summarized from the cases we cite, under the South Carolina tenet the company waives the conditions of an insuring paper insofar as they are contrary to what the agent knows beforehand. The agent's knowledge is the company's knowledge, and South Carolina presumes the company would not write insurance at once ineffective.

The judgment of the District Court must be set aside and the action remanded for trial in conformity with this opinion.

Reversed and remanded.