Will M. SIMMONS, as Temporary Administrator de bonis non of the Estate of Gloria Jean Daniels, Deceased, Plaintiff,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, Defendant.

Will M. SIMMONS, as Temporary Administrator de bonis non of the Estate of Nancy Ann Daniels, Deceased, Plaintiff,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, Defendant.

Civ. A. Nos. 8255, 8256.

United States District Court
E. D. South Carolina,
Florence Division.

Oct. 21, 1964.

As Amended Nov. 2, 1964.

Gasque, Seals & Gasque, Latta, S. C., for plaintiff.

Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for defendant.

HEMPHILL, Chief Judge.

Motions to remand companion wrongful death[1] actions to Dillon County, South Carolina Court of Common Pleas, for disposal there, raise issue of jurisdiction of this Court. Determination turns on question of diversity of citizenship,[2] amount in controversy not being at issue.

On February 16, 1962 Nancy Ann Daniels and Gloria Jean Daniels were in an auto-train collision in the Town of Latta, in Dillon County, South Carolina, where each and both resided; as a result of injuries received both died, neither being testate at time of death. Thereafter the mother of the two children exhibited in the Probate Court for Dillon County her separate petitions, each praying that Letters of Administration on the estate of the named deceased be granted to C. I. Bullock. Neither petition listed assets but each had typed on the first page of the petition, below the listing of the family group, in capital letters the words: "FOR THE PURPOSE OF BRINGING ACTION FOR WRONGFUL DEATH."

1. See § 10–1951 et seq. South Carolina Code of Laws, 1962.

2. Title 28 U.S.Code § 1332.

Probate Judge W. E. Allen, on February 19, 1962, took Bullock's oath upon Qualification of Administrator, in each instance, and, on February 26, 1962, ordered citation to issue. On March 7, 1962 formal Letters of Administration were issued. On August 30, 1963, in each case, Bullock exhibited his "First and Final Return" (marked "filed 8–29–63") and on the same day petitioned for discharge as administrator.[3] Four weeks requisite advertisement was had, and, on October 4, 1963, formal Letters Dismissory were issued.

Counsel for defendant, in argument in support of Petition for Removal, sought, in part, to justify removal on grounds that Bullock was not properly discharged; the record, up to this point, does not support such position.

On January 9, 1964, as to each estate, the mother of the two deceased again exhibited her petitions in the Probate Court for Dillon County.[4] The original records reflect that on the same day W. M. Simmons, to whom letters were requested to be issued, and whose address is listed as 5804 Augusta Drive, Springfield, Virginia, is shown to have appeared before Patty Joyce Woody, and signed the "Qualification for Administrator"; Patty Joyce Woody signed as Notary Public, although no Notary Seal is affixed beneath the signature of the Notary,[5] it appears that the signature of the then Probate Judge, Horace L. Jackson, was affixed under the name of Patty Joyce Woody, but his signature is scratched through, as are the printed words "Judge of Probate".

On January 14, 1964 suit was instituted, as to each death, in the Court of Common Pleas for Dillon County, South Carolina, captioned as hereinbefore set forth. In each it was alleged: "That the plaintiff is now and was at the times hereinafter mentioned a resident of the County of Fairfax, Virginia, and was heretofore appointed and has qualified as Temporary Administrator de bonis non of the Estate of Nancy Ann Daniels, deceased, by the Probate Court of Dillon County, South Carolina, where the deceased last resided, and is now acting as such Temporary Administrator, and brings this action for the benefit of Mary Lee T. Ray, mother of the said deceased, and Herbert Alton Daniels, father of the deceased."

If Simmons, the purported Administrator, was qualified to bring the suits by virtue of proper appointment by the Probate Court for Dillon County, no diversity of citizenship would exist, and this Court would have no jurisdiction of the two cases. He and defendant were admitted to have residence in Virginia.[6]

On January 31, 1964, before time for answering had expired, in each case defendant filed with the Clerk of Court for the United States District Court for the Eastern District of South Carolina Petition and Bond for removal to that Court. On February 3, 1964 Answer was filed in each case and Simmons' place of residence and qualifications were challenged.

The Court must now turn again to the records of the Probate Court for Dillon County.[7] The records reveal that in each instance a new "Qualification of Administrator" was typed below the previously signed one and on each appears the signature "W. M. Simmons" as sworn to before Probate Judge Horace L. Jackson

---

3. From original records of the Probate Court for Dillon County, S. C., marked file # 1698 and 1699, each file bearing, in handwriting, the wording "closed" on the outside cover. In the Petition for Discharge Bullock stated: "that petitioner is now informed * * * if he remains as Administrator of said estate, the said action will be removed for trial to the United States District Court for the Eastern District of South Carolina, at Florence."

4. Files Nos. 1816 and 1817 of the Probate Court for Dillon County, South Carolina.

5. It is assumed she is a properly qualified Notary Public for South Carolina, there being no issue before this Court as to such.

6. Defendant is a Virginia Corporation.

7. See Note 4, supra.

the 21st day of February 1964. At the hearing in Florence, S. C. on September 15, 1964 it was stated that "even if it [8] was irregular, Mr. Simmons came down on February 21, 1964 and cured that irregularity by signing it in the presence of a Probate Judge."

To further confuse the issue here the Court finds that in the case of Gloria Jean Daniels the probate file (No. 1817) contains a Petition (typewritten, not on printed form) for Letters of Administration to be issued to Simmons, dated August 30, 1963, an appointment of agent and bond,[9] signed October 5, 1963, an order purporting to appoint Simmons Administrator de bonis non of the Estate as of October 5, 1963, with the dates "9–30" and "1–9–1964" stricken through. These papers indicate they were recorded in Book 20 at pages 218–228 of the Office of Probate Court for Dillon County and were marked "Filed 1–13–64". The file also shows two separate formal "Letters of Administration", one dated January 30, 1964 and another dated January 9, 1964. In the Nancy Ann Daniels file similar papers appeared, with dates scratched through, marked "filed 1–13–64" and marked "Recorded Book 20 page 209–17". At the hearing before the Court at Florence no reliance was placed on these papers, as such, but the true climate of this controversy of jurisdiction can scarcely be realized without a look at the entire record.

In a deposition, Simmons, brother-in-law of counsel for plaintiff, on February 22, 1964, testified he first discussed his appointment with the mother. Petitioner had first appeared before the Probate Judge on February 21, 1964, but had signed another time in January of 1964. It therefore appears that the appointment of the agent, filing of bond, order of Probate Judge dated October 5, 1963, all marked "filed 1–13–64" in each case, could not have been executed on the dates designated, and are and should be void as to this determination.

This Court has no intention of becoming a Probate Court, as there is no authority for a Federal Court to probate a will or undertake the administration of an estate. In re Broderick's Will, 21 Wall. 503, 22 L.Ed. 599. Nevertheless, some determination of a probate matter must be made in order for this Court to ascertain if it has jurisdiction.

Applicable here are certain statutes by which, and only in compliance with which, can a Probate Judge in South Carolina legally appoint an administrator. The South Carolina Legislature, in its wisdom has set the guidelines; it is not for this Court to legislate by decree, nor sanction by interpretation a departure from the legislative directive.

Section 15–446 of the South Carolina Code, 1962, provides:

> "*Jurisdiction not to be collaterally impeached.*—The jurisdiction assumed by any probate court in any case, so far as it depends on the place of residence or the location of the estate, shall not be contested in any suit or proceeding whatever, except in an appeal from the probate court in the original case or when the want of jurisdiction appears on the record."

On its face it would appear that this Court would not have any right, any jurisdiction, to question the fact that temporary letters of administration were purportedly issued January 9, 1964. This statute, however, limits the protection from collateral attack to the questions of the place of residence of the deceased and the location of the estate property for purposes of determining the Court's right to proceed, to supervise in the manner expected of probate courts in South Carolina. If Simmons were properly qualified, no question would be posed under the statute. Actually, this statute has no application here. If there is a showing of defect here, and the

---

8. Referring to the attempt to qualify on January 9, 1964 (statement by plaintiff's counsel).

9. As required by § 19–591, S.C.Code, 1962.

Court ascertains there is a defect which appears on the face of the record, it is open to question.[10] Despite the above, this Court, which is not a "domestic" court, has the power to entertain collateral attack in any event. See Phoenix Bridge Co. v. Castleberry, 131 F. 175, 177, 178 (4th Cir. 1904), and McCreery v. Davis, 44 S.C. 195, 22 S.E. 178, 184, 28 L.R.A. 655.

Plaintiffs rely on the case of Atchison, Topeka & Santa Fe Railway Co. v. Preston (10th Cir. 1958), 257 F.2d 933, 935, as authority for the proposition that the right of the administratrix to maintain the action was not open to challenge upon the collateral ground that she failed to take and subscribe to the oath as such administratrix or that the taking of the oath was attended with irregularities. This Court is not advised as to the nature of the Kansas oath, as such, nor the interpretation of its Courts. The South Carolina Statute [11] provides:

> *"Oath of administrator.*—Every administrator shall, in open court when letters of administration are granted him, take the following oath or affirmation, as the case may be, to wit: 'I do solemnly swear, or affirm, that A B, deceased, died without any will, as far as I know or believe, and that I will well and truly administer all and singular the goods, chattels, rights and credits of said deceased and pay all his just debts, as far as the same will extend and the law require me and that I will make a true and perfect inventory of all such goods, chattels, rights and credits and return a just account thereof when thereunto required. So help me, God.'"

The records of the Probate Court of Dillon County, South Carolina, show on their face that no such oath was taken by Will M. Simmons before the Judge of Probate until after these actions were instituted, removed to the Federal Court and Answer filed by defendant; and thus they reflect on the surface that the appointment was invalid and without force and effect. When such appears it is not a collateral attack to assert the invalidity of the appointment. Hendrix v. Holden, supra, 58 S.C. at 526, 527, 36 S.E. 1010. South Carolina has thus recognized the propriety, the necessity of questioning the validity of appointment when such is necessary to a determination of the vital issue of jurisdiction. Such is the issue here.

The South Carolina Legislature also commands:[12]

> *"Requirement for nonresident to act as representative; foreign testamentary trustee.*—No letters testamentary or of administration shall be granted or issued to any nonresident individual by any probate judge or court of common pleas of this State unless such applicant for such appointment as executor or administrator shall in any event first enter into and file an approved fiduciary bond in the same manner, upon the same conditions, in the same sum and with like surety as is required by law with respect to resident administrators. Such applicant for such appointment shall also first file with the probate judge or clerk of the court of common pleas where such application for appointment is made his consent in writing that service of all claims, demands, debts, dues, summons and any other process or pleadings in suits or actions relating to the administration of the estate in his charge in this State may be made by service upon such resident of such county as may be appointed in such written instrument and in the event of the death, removal, resignation, absence from the State or any other reason for inability to obtain service upon such agent named in such written instru-

10. See Hendrix v. Holden, 58 S.C. 495, 527, 36 S.E. 1010; and Dunlap v. Savings Bank, 69 S.C. 270, 272, 48 S.E. 49.

11. § 19–431, S.C.Code, 1962.

12. § 19–591, S.C.Code, 1962; cited, too, Note 12, supra.

ment or any successor named by a similar instrument filed with the probate judge or clerk of the court of common pleas, then upon the probate judge or clerk of the court of common pleas of such county. * * *."

If the purported appointment was attempted on January 9, 1964; nevertheless, because of failure to follow the statutory requisite of the qualification oath before the judge of probate, Simmons was not a duly qualified administrator. By his own admission he never signed the August 30 (or October 5), 1963 papers until January 9, if at all. The papers were dated October 1963 and marked "filed 1–13–64". If he had to wait until February 21, 1964 to ratify, he had no right to institute suit on January 14, 1964. He has, therefore, not proved qualification (or better said, it does not appear that he is qualified) as to either requisite statute on or before January 14, 1964; no oath, no bond, no agent.

■ Court appointment has always been necessary to give the administrator authority to act. The person appointed must take an oath and furnish bond before he has finally qualified for the office of executor or administrator.[13]

■ Plaintiff argues ratification, but if the act was void, can it be brought to life after the adverse party has acted? This Court thinks not. "A nunc pro tunc entry is for the purpose of recording some action that was taken or judgment rendered previously to the making of the entry, which is to take effect as of the former date. Such an entry cannot be made to serve the office of correcting a decision, however erroneous, or of supplying non-action on the part of the court." Stubbs v. Mendel, 148 Ga. 802, 98 S.E. 476.

■■ The Latin phrase, "nunc pro tunc" is merely descriptive of the inher-

ent power of a court to make its records speak the truth, i. e., to record that which is actually, but omitted to be recorded. ABC Packard v. General Motors Corp. (9th Cir. 1960) 275 F.2d 63, 75. The doctrine cannot apply here as the record was not correct in the first instance, either October 5, 1963, since there was no signature by Simmons at that time, nor January 9, 1964, when neither oath, bond, nor designation of agent were according to statute.

■ A review of the probate rolls in question sustains the conclusion that the alleged appointments were void and, accordingly, there was no valid administrator at the time the suits were brought. This goes to the heart of the Court's jurisdiction.

■ The dilemma now before the Court is: If the administrations have fallen because of the reasoning heretofore urged, must the suits fall? Reluctantly, the Court concludes that because there were no valid administrations at the time of the institution of suit, there was no one qualified to bring suit under the South Carolina Wrongful Death Act [14] which must be "brought by or in the name of the executor or administrator of such person." McDaniel v. McDaniel, 243 S.C. 286, 133 S.E.2d 809, 811.

■ It appears that the only deviation from the applicable statutes was allowed in Bailes v. Southern Railway Co., 227 S.C. 176, 87 S.E.2d 481. There the Administrator defrauded the beneficiaries under the Wrongful Death Act and the beneficiaries were allowed to sue in their own name, naming the Administrator as a party defendant.[15] Of course, if the beneficiaries in the case at bar were allowed to sue in their own names, the Court could have jurisdiction because of diversity of citizenship. However, in the instant matter, unlike in Bailes, it does not appear that the Ad-

---

13. Atkinson on Wills, § 111, p. 620, and §§ 19–431, 19–591, S.C.Code, 1962.

14. Section 10–1952, S.C.Code, 1962.

15. See the excellent discussion of Bailes by Professor Coleman Karesh of the University of South Carolina Law School in 9 S.C.L.Q. 164 (1956).

ministrator's actions have been in the nature of a delict against the beneficiaries. Under Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. this Court must adhere to the State rule. Home Fire & Marine Ins. Co. v. Tisdale, 303 F.2d 348, 352, (4th Cir. 1962).

From the face of the records it appears that W. M. Simmons was not and is not for purposes of this action an "Administrator" within the meaning of Rule 17(a) of the Federal Rules or the applicable South Carolina statutes, and has no capacity to sue. Accordingly, this Court has no jurisdiction to further consider this matter except to dismiss for lack of jurisdiction because "diversity of citizenship" does not exist. Nor will the Court comment on certain "discrepancies" heretofore related; suffice it to say they speak for themselves.

Except for the fact that no assets exist, as such, costs in full would be ordered taxed against plaintiffs. In the event, however, these causes, or either, later become subject to the jurisdiction of this Court, further proceedings in this Court are stayed at such time, and until such time, as the costs incurred herein have been paid.

In accordance with 28 U.S.C. § 1292 (b), the Court hereby certifies that it is of the opinion that the within order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the within order of the Court may materially advance the ultimate termination of the litigation; and that either party should have the opportunity to apply to the Court of Appeals for the Fourth Circuit for permission for an appeal to be taken from such order if either should so desire. Should such application for an appeal be made by either party and such permission be granted by the Court of Appeals, then further proceedings in this case shall be stayed until a determination of the appeal.

And it is so ordered.